JUSTICE ALBIN delivered the opinion of the Court.
*381 **222 A police officer has the lawful right to request that a driver, stopped for a motor vehicle violation, provide proof of ownership. N.J.S.A. 39:3-29. One reason for this regulatory law is to ensure that the driver is not operating a stolen motor vehicle. When a driver is unwilling or unable to present such proof, our jurisprudence permits the officer to conduct a limited search of those places in the vehicle where proof of ownership is ordinarily kept. See State v. Keaton, 222 N.J. 438, 448-49, 119 A.3d 906 (2015) ; State v. Pena-Flores, 198 N.J. 6, 31, 965 A.2d 114 (2009). This very narrow exception to the warrant requirement is based primarily on public-safety concerns that require prompt action, as in the present case.
Defendant Keith Terry caused a patrol car to activate its lights and siren after the rental truck he was driving ran a stop sign.
**223 Defendant triggered a dangerous chase as he eluded the police, weaving through traffic before pulling into a gas station. The police removed defendant from the truck at gunpoint, and defendant did not respond to an officer's repeated requests to show the truck's registration or proof of ownership. In light of defendant's silence and his failure to indicate he was in lawful possession of the truck, a police officer conducted a limited search of the glove compartment for the truck's ownership papers and, in the process, observed a handgun in plain view on the vehicle's floor. Thereafter, defendant was charged with and found guilty by a jury of unlawful possession of a firearm and hollow point bullets.
Although the trial court denied defendant's motion to suppress the handgun, the Appellate Division reversed and vacated defendant's conviction. It held that the search was unreasonable because the police did not give defendant the opportunity to produce the truck's registration.
We conclude that the Appellate Division erred in substituting its factfindings for those of the trial court. Sufficient credible evidence supported the trial court's determination that defendant was given an adequate opportunity to present the vehicle's registration before the search commenced. We reaffirm our decision in Keaton--and in previous cases--that, when a driver is unwilling or unable to present proof of a vehicle's ownership, a police officer may conduct a limited search for the registration papers in the areas where they are likely kept in the vehicle. We add this *382 limiting principle. When a police officer can readily determine that the driver or passenger is the lawful possessor of the vehicle--despite an inability to produce the registration--a warrantless search for proof of ownership will not be justified.
The limited registration search exception to the warrant requirement has long been embedded in our jurisprudence and has been adopted by many other courts. We reject the constitutional challenge to the limited registration search exception, as applied here, and hold that the search of defendant's glove box was **224 reasonable under the Fourth Amendment and Article I, Paragraph 7 of our State Constitution.
Accordingly, we reverse the judgment of the Appellate Division and remand for its consideration issues not reached on defendant's direct appeal.
I.
A.
Defendant was charged in an indictment with second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b), and fourth-degree possession of hollow point bullets, N.J.S.A. 2C:39-3(f). Defendant claimed that the police discovered the handgun and bullets by searching his truck in violation of the Fourth Amendment and Article I, Paragraph 7 of the New Jersey Constitution. He therefore moved to suppress those items from evidence in his upcoming trial.
At a suppression hearing, the State called Union Township Police Officer Joseph Devlin, the sole witness to testify at the hearing. The record before us is based on his testimony.
On December 31, 2010, at approximately 6:50 p.m., while operating a marked patrol car in Union Township, Officer Devlin observed defendant's GMC truck run a stop sign on Ingersoll Terrace and turn right onto the eastbound lane of Morris Avenue. As it barreled through the stop sign, the GMC truck almost struck Officer Devlin's patrol car, which was traveling eastbound on Morris Avenue. On this portion of Morris Avenue, two lanes flow in each direction. Officer Devlin activated the overheard lights and siren of his patrol car, which was then positioned immediately behind defendant's vehicle.
Defendant did not pull to the side of the road, despite the flashing lights and blaring siren behind him. Instead, without signaling, he zigzagged back and forth from the right to the left lane in traffic. During the chase, Officer Devlin relayed the truck's **225 license plate number to a dispatcher, who notified him that the vehicle was a Newark Airport Hertz rental, which at that point had not been reported stolen. After traveling approximately a half mile, defendant turned into a gas station where he came to a stop.
Officer Devlin parked his patrol car behind defendant's truck while a back-up police officer in a marked unit pulled in front of the truck, effectively blocking it in. The two officers drew their guns. As Officer Devlin walked toward the driver's door, his view was obscured by the truck's tinted rear windows. Officer Devlin wondered why the truck failed to stop and whether it was stolen. When Officer Devlin reached the driver's door, he saw defendant seated behind the wheel.
With the other officer beside him and their guns trained on defendant, Officer Devlin repeatedly ordered defendant to show his hands, "for our safety [and] your safety," but defendant made no response. Twenty to thirty seconds later, Officer Devlin opened the driver's door and commanded that he step out of the vehicle. Defendant did so, leaned against the truck, put his hands in his pockets, and asked *383 why the officers had pulled him over. Although Officer Devlin repeatedly instructed defendant to show his hands, he was slow to comply. The two officers quickly patted defendant down, assuring themselves he was not armed with a weapon.
When Officer Devlin asked defendant for identification, defendant reached into his pocket, pulled out his wallet, and presented his license. Officer Devlin next requested that defendant produce the vehicle's registration and insurance card. Defendant did not respond, "[h]e just stood there with a blank stare on his face." The officer asked a second time, and defendant "shrugged his shoulders." Defendant made no non-verbal gestures to indicate that the papers were on his person or in the truck. Finally, Officer Devlin asked defendant whether he owned the truck or had any paperwork for it. Again, defendant did not respond; instead, "he just stood there with a blank stare."
At this point, Officer Devlin went to the passenger's side of the truck, opened the door, and using his flashlight looked in the glove **226 box--"[t]he most common place" where ownership and insurance papers are stored. Although he found no documentation in the glove box, the light from his flashlight reflected against a white object on the passenger's floorboard. That object was a handgun.[1]
Officer Devlin closed the passenger's door and arrested defendant. The officers searched defendant incident to the arrest and found a valid rental agreement for the truck in his front jacket pocket. The vehicle was towed to the Union Township police garage. Later, the police secured a search warrant and recovered the handgun, which was loaded with hollow point bullets.
B.
The trial court denied defendant's motion to suppress. The court found that Officer Devlin "was a reasonable and credible witness."[2] The court concluded that because defendant failed to produce the vehicle registration on demand, Officer Devlin had a right to search for the registration, rental agreement, and insurance in the area where such documents are usually kept. The court further determined that Officer Devlin's observation of the handgun met the plain view exception to the warrant requirement. The court also denied defendant's motion for reconsideration.
At the conclusion of a jury trial in August 2013, defendant was found guilty of both weapons offenses. The trial court sentenced defendant to a five-year prison term with a three-year period of **227 parole disqualification for the handgun-possession offense and to a concurrent twelve-month term for the hollow-nose-bullet offense. Financial penalties and assessments were also imposed.
C.
A panel of the Appellate Division reversed the trial court's order suppressing *384 the evidence and vacated defendant's conviction. The panel determined that the warrantless search of defendant's truck for the vehicle's registration or proof of ownership violated both the Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution. In reaching that conclusion, the panel applied our decision in Keaton, which held that a driver must be given an opportunity to present his credentials, and only if he "is unable or unwilling to produce his registration or insurance information ... may an officer conduct a search for those credentials." 222 N.J. at 442-43, 119 A.3d 906.
According to the panel, Officer Devlin assumed that defendant's shrug suggested that defendant did not know where the ownership credentials were located. The panel also surmised that "defendant's non-verbal response to Officer Devlin's requests may have been the product of fear." The panel reasoned that merely because defendant did not know the location of the credentials did not mean he was "unwilling" to produce them. The panel further reasoned that because the police did not give defendant the opportunity to reenter the truck, the State was foreclosed from arguing that defendant was "unable" to present the ownership papers. Under the panel's analysis, the State did not establish that defendant was "unable or unwilling to produce" proof of ownership, and therefore a warrantless search was not justified. The panel also suggested that the search was unnecessary and therefore unreasonable because Officer Devlin could have issued summonses for failure to stop and unsafe lane change without access to paperwork showing a valid registration and insurance.
Finally, the panel opined that Keaton and Pena-Flores have effectively "superseded" State v. Lark, in which the Appellate **228 Division ruled that the police could not search a car for a license when the driver's "identity was unnecessary to prove the motor vehicle offense." 319 N.J. Super. 618, 627, 726 A.2d 294 (App. Div. 1999), aff'd, 163 N.J. 294, 748 A.2d 1103 (2000).
D.
We granted the State's petition for certification. 228 N.J. 448, 157 A.3d 858 (2016). We also granted the motions of the Attorney General of New Jersey and the American Civil Liberties Union of New Jersey (ACLU-NJ) to participate as amici curiae.
II.
A.
The State contends that the Appellate Division ignored the pronouncement in Keaton allowing for a limited registration search when a defendant is unwilling or unable to produce proof that he is the lawful possessor of a vehicle and when, as here, the warrantless search is grounded in public safety. The State asserts that because of defendant's "threatening, non-compliant manner" and the officer-safety concerns that prompted his removal from the truck, the police acted reasonably by not permitting defendant to return to the vehicle before conducting a limited search of the glove box for the rental agreement. The State maintains that, given the totality of the circumstances, the officers acted in an objectively reasonable manner based on the fast-paced events facing them.
In support of the State's position, the Attorney General, as amicus curiae, posits that "[p]ublic safety must always be part of the calculus in assessing the reasonableness of police conduct in conducting a motor vehicle stop." The Attorney General contends that "defendant's evasive and obstructionist behavior" justified the officers removing defendant from the truck for their safety and that, given defendant's *385 unwillingness or inability to produce the rental agreement or to indicate its location, the officers acted **229 reasonably in not permitting him to return to the vehicle. The Attorney General submits that a defendant's failure to present proof of ownership "supports a reasonable suspicion that [a] vehicle is stolen," quoting State v. Holmgren, 282 N.J. Super. 212, 215, 659 A.2d 939 (App. Div. 1995), and points out that, here, defendant could easily have grabbed the gun on the floorboard had he been allowed to reenter the vehicle. For those reasons, the Attorney General concludes that the limited search of the glove box for the rental agreement was constitutionally permissible.
B.
Defendant argues that a warrantless search for proof of a vehicle's ownership in a glove box, even in the limited circumstances permitted by Keaton, violates the Fourth Amendment. In defendant's view, because the United States Supreme Court has yet to recognize a "credentials exception" to the warrant requirement of the Fourth Amendment, this Court does not have the power to do so. Defendant, moreover, maintains that a credentials search could not be justified even if it were subject to the test articulated in Terry v. Ohio, 392 U.S. 1, 19-24, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), balancing the State's claimed need for the search against the intrusion into an individual's privacy rights. According to defendant, the balance favors the individual, not the government, because the rationale of a credentials search is predicated on law enforcement's need to access information about a vehicle's ownership and not to ensure officer safety. He reasons that merely because N.J.S.A. 39:3-29 requires a driver to present his registration to a police officer does not mean that the statute authorizes a search for the document. Additionally, defendant claims that the police gave him less than two minutes to present the documents and that was not "a reasonable opportunity" to do so. In his view, the police should have "sent him on his way after he failed to present his credential[s] and was ticketed for that offense."
**230 Aligned with defendant, the ACLU-NJ, as amicus curiae, expresses its hope that "this Court will repudiate the driving documents exception to the warrant requirement." Alternatively, the ACLU-NJ argues that the search for the vehicle's ownership papers in this case did not meet the standard set forth in Keaton. The ACLU-NJ submits that (1) defendant "was not provided a reasonable opportunity to present his own credentials, given the extreme circumstances of his seizure"; (2) "the search was not conducted for the purpose of establishing ownership of the vehicle"; and (3) the search exceeded its permissible scope and was not tailored to the traffic violation committed.
III.
A.
We first must address defendant's Fourth Amendment challenge to the constitutionality of the limited registration search exception to the warrant requirement set forth in New Jersey jurisprudence, most recently in Keaton. Although defendant did not raise a constitutional challenge to the limited registration search exception before the trial court or Appellate Division, we will decide the issue because of its general importance and because only this Court can reverse its own precedents. See Presbyterian Homes of Synod v. Div. of Tax Appeals, 55 N.J. 275, 289, 261 A.2d 143 (1970) ("This Court may ... accept a constitutional question not raised below." (citing *386 Lettieri v. State Bd. of Med. Exam'rs, 24 N.J. 199, 206, 131 A.2d 518 (1957) ) ).
When the trial court has applied the proper legal principles at a suppression hearing, we defer to its factual findings "so long as those findings are supported by sufficient credible evidence in the record." State v. Gamble, 218 N.J. 412, 424, 95 A.3d 188 (2014) (citing State v. Elders, 192 N.J. 224, 243, 927 A.2d 1250 (2007) ). Deference to those findings is particularly appropriate when the court had the "opportunity to hear and see the witnesses" on which it rendered its decision. See **231 Elders, 192 N.J. at 244, 927 A.2d 1250 (quoting State v. Johnson, 42 N.J. 146, 161, 199 A.2d 809 (1964) ).
B.
The United States Constitution and New Jersey Constitution prohibit law enforcement officials from carrying out "unreasonable searches and seizures" and guarantee that warrants shall not issue in the absence of "probable cause." U.S. Const. amend. IV ; N.J. Const. art. I, ¶ 7. "[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness.' " Riley v. California, 573 U.S. ---, 134 S.Ct. 2473, 2482, 189 L.Ed.2d 430 (2014) (quoting Brigham City v. Stuart, 547 U.S. 398, 403, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006) ); see also State v. Novembrino, 105 N.J. 95, 185, 519 A.2d 820 (1987). "[T]he Fourth Amendment does not require that every search be made pursuant to a warrant. It prohibits only 'unreasonable searches and seizures.' ... The test of reasonableness cannot be fixed by per se rules; each case must be decided on its own facts." South Dakota v. Opperman, 428 U.S. 364, 372-73, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976) (alteration in original) (quoting Coolidge v. New Hampshire, 403 U.S. 443, 509-10, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (Black, J., concurring and dissenting) ).
Nevertheless, within our constitutional framework, a warrantless search is presumptively invalid and is permissible only if it falls within one of the recognized exceptions to the warrant requirement. Elders, 192 N.J. at 246, 927 A.2d 1250 (citing State v. Pineiro, 181 N.J. 13, 19-20, 853 A.2d 887 (2004) ); see also State v. Wilson, 178 N.J. 7, 12, 833 A.2d 1087 (2003). One of the well-established exceptions to the warrant requirement is the automobile exception. Carroll v. United States, 267 U.S. 132, 153, 45 S.Ct. 280, 69 L.Ed. 543 (1925). In the context of an automobile stop, "the permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests."
**232 Delaware v. Prouse, 440 U.S. 648, 654, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979) ; cf. Terry, 392 U.S. at 21, 88 S.Ct. 1868 (assessing reasonableness of warrantless police frisk of suspect, in part, by balancing "governmental interest which allegedly justifies official intrusion" against "the constitutionally protected interests of the private citizen" (quoting Camara v. Mun. Court of San Francisco, 387 U.S. 523, 534-35, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) ) ).
A corollary to the automobile exception--one recognized in New Jersey and many other states--is the authority of a police officer to conduct a pinpointed search for proof of ownership when a motorist "is unable or unwilling to produce his registration or insurance information." Keaton, 222 N.J. at 442-43, 119 A.3d 906. This limited registration search exception is partly rooted in the common-sense notion that the inability or unwillingness of a driver to produce a vehicle's registration may raise "a reasonable suspicion that the vehicle was stolen." See *387 Holmgren, 282 N.J. Super. at 216, 659 A.2d 939. Although the limited registration search exception is well-ingrained in New Jersey jurisprudence, we have never before discussed the constitutional underpinnings of that doctrine.
IV.
A.
The justification for the limited registration search doctrine in many ways corresponds with that of the automobile exception to the warrant requirement. Under the Fourth Amendment, a police officer is authorized to conduct a warrantless search of a lawfully stopped motor vehicle "if it is 'readily mobile' and the officer has 'probable cause' to believe that the vehicle contains contraband or evidence of an offense." State v. Witt, 223 N.J. 409, 422, 126 A.3d 850 (2015) (quoting Pennsylvania v. Labron, 518 U.S. 938, 940, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996) ).[3]
**233 The automobile exception is premised on three rationales:
(1) the inherent mobility of the vehicle, Carroll, 267 U.S. at 153 [45 S.Ct. 280] ;
(2) the lesser expectation of privacy in an automobile compared to a home, California v. Carney, 471 U.S. 386, 391-93 [105 S.Ct. 2066, 85 L.Ed.2d 406] (1985) ; and
(3) the recognition that a Fourth Amendment intrusion occasioned by a prompt search based on probable cause is not necessarily greater than a prolonged detention of the vehicle and its occupants while the police secure a warrant, Chambers v. Maroney, 399 U.S. 42, 51-52 [90 S.Ct. 1975, 26 L.Ed.2d 419] (1970).
[ Witt, 223 N.J. at 422-23, 126 A.3d 850.]
The inherent-mobility rationale does not require further analysis here, but the other two rationales offer strong support for the limited registration search exception.
B.
It is well understood that motorists have a lesser expectation of privacy in their vehicles when driven on our roadways. See State v. Donis, 157 N.J. 44, 51-52, 723 A.2d 35 (1998). Given New Jersey's "extensive regulation of its highways and thoroughfares, '[e]very operator of a motor vehicle must expect that the State, in enforcing its regulations, will intrude to some extent upon that operator's privacy.' " Ibid. (alteration in original) (quoting New York v. Class, 475 U.S. 106, 113, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986) ). Indeed, the State has a "compelling interest in maintaining highway safety by ensuring that only qualified drivers operate motor vehicles and that motor vehicles are in a safe condition." Id. at 51, 723 A.2d 35 (quoting State v. Kadelak, 280 N.J. Super. 349, 360, 655 A.2d 461 (App. Div. 1995) ); see also Prouse, 440 U.S. at 658, 99 S.Ct. 1391 ("The registration requirement ... [is] designed to keep dangerous automobiles off the road."). That compelling state interest extends to ensuring that operators are not in possession of stolen vehicles. See **234 Donis, 157 N.J. at 52, 723 A.2d 35 (noting that one reason for collection of registration information by Division of Motor Vehicles is "to *388 assist law enforcement officers in locating the owners of stolen cars" (quoting Governor's Reconsideration and Recommendation Statement for A. 1845 & A. 2448 (1989), reprinted in N.J.S.A. 39:3-4 ) ).
Under this highly regulated scheme, the operator of a motor vehicle must "exhibit the registration certificate, when requested to so to do by a police officer," N.J.S.A. 39:3-29, and must "comply with any direction, by voice or hand" by the officer, N.J.S.A. 39:4-57. Additionally, a "police officer is authorized to remove any unregistered vehicle from the public highway to a storage space or garage," N.J.S.A. 39:3-4, or to impound a car that he reasonably believes may be stolen, after an operator or passenger is unable to establish he is in lawful possession, N.J.S.A. 39:5-47 ("The commission may authorize the seizure of a motor vehicle operated ... when it has reason to believe that the motor vehicle has been stolen or is otherwise being operated under suspicious circumstances."), cited in State v. Hock, 54 N.J. 526, 532-35, 257 A.2d 699 (1969).
The Fourth Amendment, moreover, is not offended if an automobile is seized or its operator temporarily detained when a law enforcement officer has a reasonable and articulable suspicion that the vehicle is unregistered or stolen. See Prouse, 440 U.S. at 663, 99 S.Ct. 1391.
C.
When the operator of a vehicle is unable or unwilling to produce the registration or ownership papers, as in the present case, a quick, pinpointed search for the documents in the glove compartment is arguably a lesser intrusion under the Fourth Amendment than the immediate impoundment of the vehicle and detention of the operator. That follows from the reasoning of the United States Supreme Court in adhering to the automobile exception. That Court has held, as one rationale for the automobile warrant exception, that "for Fourth Amendment purposes, an immediate search of a vehicle may represent a lesser intrusion than impounding **235 the vehicle and detaining its occupants while the police secure a warrant." See Witt, 223 N.J. at 424, 126 A.3d 850 (citing Chambers, 399 U.S. at 51-52, 90 S.Ct. 1975 ); see also United States v. Ross, 456 U.S. 798, 831, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) ("A defendant may consider the seizure of the car a greater intrusion than an immediate search.... In effect, the warrantless search is permissible because a warrant requirement would not provide significant protection of the defendant's Fourth Amendment interests." (Marshall, J., dissenting) (citation omitted) ); cf. Class, 475 U.S. at 118, 106 S.Ct. 960 (finding no Fourth Amendment violation when officer moved papers covering VIN inside vehicle because "search was far less intrusive than a formal arrest, which would have been permissible for a traffic offense under New York law").
In the case before us, had Officer Devlin not been able to conduct an immediate search of the glove compartment, his other option would have been to impound the vehicle. See Slockbower, 79 N.J. 1, 6, 397 A.2d 1050 (1979) ; Hock, 54 N.J. at 532-35, 257 A.2d 699 ; see also N.J.S.A. 39:3-4 ; N.J.S.A. 39:5-47. An inventory search of an impounded vehicle is a constitutionally permissible practice. See Opperman, 428 U.S. at 369-72, 96 S.Ct. 3092. Significantly, "standard inventories often include an examination of the glove compartment, since it is a customary place for documents of ownership and registration." Id. at 372, 96 S.Ct. 3092. For Fourth Amendment purposes, the impoundment and inventory search of a vehicle for registration arguably is more intrusive than a limited registration search at the scene.
*389 With those principles in mind, we now look at the development of the limited registration search exception to the warrant requirement in this State and other jurisdictions.
V.
A.
The first reported mention of the limited registration search exception in New Jersey is in State v. Boykins, in which this Court **236 upheld the constitutionality of the search of a car that crashed after a police chase. 50 N.J. 73, 82-83, 232 A.2d 141 (1967). In that case, the search was justified because the events suggested the probability that the vehicle's occupants "were involved in some substantial criminal affair" and that they "had on their persons or in the car contraband or instruments or the fruit of crime." Id. at 77-78, 232 A.2d 141. In writing for the Court, Chief Justice Weintraub noted what was to him an unremarkable principle:
Surely not every traffic violation will justify a search of every part of the vehicle. A traffic violation as such will justify a search for things related to it. So, for example, if the operator is unable to produce proof of registration, the officer may search the car for evidence of ownership....
[ Id. at 77, 232 A.2d 141 (emphasis added) (citation omitted) (citing Draper v. Maryland, 265 F.Supp. 718 (D. Md. 1967) ; People v. Prochnau, 251 Cal.App.2d 22, 59 Cal.Rptr. 265 (1967) ).]
It may well be that a limited registration search was an existing and unchallenged practice in New Jersey when Chief Justice Weintraub offered his illustrative dictum. The Chief Justice obviously viewed registration searches, under appropriate circumstances, as an acceptable practice at the time.
Since Boykins, the courts of this State have repeatedly reaffirmed the vitality of the limited registration exception to the warrant requirement. See Keaton, 222 N.J. at 448-50, 119 A.3d 906 (stating that when car is stopped for motor vehicle violation and driver is "unable or unwilling" to produce registration or proof of ownership, the officer may search the car for evidence of ownership); Pena-Flores, 198 N.J. at 31, 965 A.2d 114 (stating that when officer found that driver's license plate and bill of sale did not correspond to vehicle, officer "was entitled, separate and apart from the automobile exception, to look into the areas in the vehicle in which evidence of ownership might be expected to be found" (citing United States v. Kelly, 267 F.Supp.2d 5, 14 (D.D.C. 2003) ; Boykins, 50 N.J. at 77, 232 A.2d 141 ; State v. Jones, 195 N.J. Super. 119, 122-23, 478 A.2d 424 (App. Div. 1984) ) ); State v. Patino, 83 N.J. 1, 12, 414 A.2d 1327 (1980) ("[A] search to find the registration would be permissible if confined to the glove compartment or other area where a registration might normally be kept in **237 a vehicle." (quoting State v. Barrett, 170 N.J. Super. 211, 215, 406 A.2d 198 (Law Div. 1979) ) ); Holmgren, 282 N.J. Super. at 215, 659 A.2d 939 ("[W]here there has been a traffic violation and the operator of the motor vehicle is unable to produce proof of registration, a police officer may search the car for evidence of ownership." (quoting Jones, 195 N.J. Super. at 122-23, 478 A.2d 424 ) ); Jones, 195 N.J. Super. at 122-23, 478 A.2d 424 (same); State v. Gammons, 113 N.J. Super. 434, 437-38, 274 A.2d 69 (App. Div.), aff'd o.b., 59 N.J. 451, 283 A.2d 897 (1971) (upholding search conducted "for the registration in the glove compartment, the logical place to look" because "[t]here was nothing improper or unreasonable in ... doing so"). *390 In Keaton, just three years ago, a unanimous Court affirmed and applied the limited registration exception, holding that when an operator is "unable or unwilling" to produce his registration, an officer may conduct a limited and focused search for the ownership credentials. 222 N.J. at 442-43, 448-50, 119 A.3d 906. No constitutional alarm was sounded about the validity of the limited registration exception.[4]
In that case, a State Police trooper responded to the scene of an accident, where he found an overturned car. Id. at 443, 119 A.3d 906. At the time of the trooper's arrival, the driver was being treated by emergency medical technicians for his injuries. Ibid. The trooper did not ask the driver for his "credentials or request permission to enter the vehicle to obtain the registration and insurance information" because he knew the driver would be taken to the hospital and he did not "want to slow the process down." Id. at 443-44, 119 A.3d 906. The trooper entered the overturned car to retrieve the registration and insurance in the glove compartment and, while inside the vehicle, discovered a handgun in a backpack and marijuana on the dashboard. Id. at 444, 119 A.3d 906.
**238 We found that the search violated the Fourth Amendment and Article I, Paragraph 7 of our State Constitution and upheld the suppression of the evidence because the trooper "was required to provide [the driver] with the opportunity to present his credentials before entering the vehicle." Id. at 442-43, 447-48, 451, 119 A.3d 906. In doing so, we restated the standard governing the limited registration search exception. A driver must be given an opportunity to present his registration or insurance information, and only if he "is unable or unwilling" to do so "may an officer conduct a search for those credentials." Id. at 442-43, 119 A.3d 906. An incapacitated driver--for example, one rendered unconscious--will be "unable to produce proof of registration, [and therefore] the officer may search the car for evidence of ownership." See id. at 448, 119 A.3d 906.
We made clear that a search for proof of ownership must be reasonable in scope and therefore "confined to the glove compartment or other area where registration might normally be kept in a vehicle." Id. at 449, 119 A.3d 906 (quoting Patino, 83 N.J. at 12, 414 A.2d 1327 ). While the scope of the search must be minimally intrusive and narrowly targeted to the area where a driver would ordinarily store his or her registration, id. at 448-49, 119 A.3d 906, an officer may seize any contraband within his plain view, id. at 448, 119 A.3d 906.
In summary, under our state law, police officers have the authority to verify the ownership of any lawfully stopped vehicle, N.J.S.A. 39:3-29, :4-57, and the authority to impound a vehicle when proof of ownership cannot be provided, see Hock, 54 N.J. at 532-35, 257 A.2d 699.[5] The authority to *391 conduct a warrantless **239 registration search is premised on a driver's lesser expectation of privacy in his vehicle and on the need to ensure highway and public safety. A motorist must be given a meaningful opportunity to produce ownership credentials, but if he is either unable or unwilling to do so, an officer may conduct a brief and targeted search of the area where the registration might normally be kept in the vehicle. See Keaton, 222 N.J. at 448, 119 A.3d 906.
B.
The courts in a number of other jurisdictions have determined that, in appropriate circumstances, a limited warrantless search of a motor vehicle for proof of ownership does not violate the Fourth Amendment. See generally 3 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 7.4(d) (5th ed. 2012) ("Under a variety of circumstances, it is reasonable for the police to make a limited search of a vehicle in an effort to determine ownership."); H.H. Henry, Annotation, Lawfulness of Nonconsensual Search and Seizure Without Warrant, Prior to Arrest, 89 A.L.R. 2d 715 (2017).
In United States v. Brown, the United States Court of Appeals for the Ninth Circuit upheld a limited warrantless search for a vehicle's registration. 470 F.2d 1120, 1121-22 (9th Cir. 1972). In that case, police officers stopped the defendant for a traffic violation. Id. at 1121. The defendant failed to produce both his driver's license and the vehicle registration as required by state law, "responded vaguely to a question regarding the vehicle's ownership," and "was found in the illegal possession of chemical mace." Id. at 1121-22. The Court of Appeals concluded that those facts justified a limited search for the vehicle registration. Id. at 1122.
**240 In Kelly, the United States District Court for the District of Columbia, in addressing a registration search, noted that "[t]he state courts of New Jersey have adopted a sagacious approach to the issue." 267 F.Supp.2d at 13. In recognizing the registration search exception, the District Court stated:
Police officers need to know ownership information of vehicles involved in traffic violations and accidents, and of abandoned vehicles. When a law enforcement officer is investigating a traffic violation or an accident, and the driver is unwilling or unable to produce the registration of the vehicle involved to the officer upon demand, it is reasonable for the officer to conduct a limited search for the registration in those areas where the registration would likely be located.
[ Id. at 14.]
The District Court in Kelly further explained that an individual's privacy interest is diminished when the search proceeds after a registration request is "unheeded" and the "search is limited to the places where a registration would usually be found--specifically, the glove compartment of the vehicle." Ibid. On balance, the District Court concluded that although "the intrusion is slight, the governmental interest is quite significant." Ibid.; see also United States v. Lopez, 474 F.Supp. 943, 948 (C.D. Cal. 1979) (holding that limited registration search permissible only if officers make "reasonable attempt to procure the registration before an unconsented entry" and at a minimum make inquiry of "the whereabouts of the registration prior to the entry").
A number of state courts have adopted registration search exceptions similar to our own. See, e.g., *392 People v. Flores, 231 Ill.App.3d 813, 173 Ill.Dec. 325, 596 N.E.2d 1204, 1210 (1992) (upholding constitutionality of search "limited to parts of the automobile which would provide [ownership] identification information"); People v. Braan, 80 A.D.2d 920, 437 N.Y.S.2d 388, 389-90 (1981) (sanctioning registration search of rental vehicle because of officer-safety concerns); State v. Byrd, 23 N.C.App. 718, 209 S.E.2d 516, 517 (1974) (upholding registration search because "[w]hen defendant could not produce a registration certificate, the examination of the glove compartment for evidence of registration and ownership was reasonable, and the officer could not ignore the pistol that he found"); **241 State v. Bright, 8 Or.App. 202, 493 P.2d 757, 757-58 (1972) (upholding officer's search of abandoned car's ownership documents, which yielded evidence of burglary); Jordan v. Holland, 174 W.Va. 230, 324 S.E.2d 372, 377-78 (1984) (upholding constitutionality of "warrantless search of the glove compartment for ownership identification"); cf. State v. Williams, 8 Kan.App.2d 14, 648 P.2d 1156, 1162 (1982) (holding that search of truck for "documents required to be maintained and kept in the truck cab, and to check for required safety equipment, is not unreasonable under the Fourth Amendment of the United States Constitution").
In People v. Martin, the California Court of Appeal upheld a registration search in a case involving a driver stopped for illegible plates. 23 Cal.App.3d 444, 100 Cal.Rptr. 272, 273 (1972). The driver was not the owner of the vehicle, was unable to produce a license, and did not know the location of the registration. Ibid. Under those circumstances, the appellate court determined that the police officers were justified in "searching the automobile for the registration certificate so they could (1) issue a citation to the actual owner, and (2) determine whether the vehicle was stolen." Ibid. Notably, the appellate court sanctioned the officer's search of "the glove compartment himself, rather than risk the danger that the passenger might pull a weapon out of the glove compartment." Ibid.
The Martin court's analysis has been adopted by the California Supreme Court. See, e.g., In re Arturo D., 27 Cal.4th 60, 115 Cal.Rptr.2d 581, 38 P.3d 433, 439 n.5 (2002) ; People v. Turner, 8 Cal.4th 137, 32 Cal.Rptr.2d 762, 878 P.2d 521, 545-46 (1994) ; People v. Webster, 54 Cal.3d 411, 285 Cal.Rptr. 31, 814 P.2d 1273, 1281-82 (1991).
Some courts, however, have rejected the registration search exception. See, e.g., State v. Branham, 191 Ariz. 94, 952 P.2d 332, 333 (Ariz. Ct. App. 1997) (holding that, under Fourth Amendment, police officer making legitimate traffic stop may not "conduct a limited search for the vehicle registration card based solely on the driver's failure to produce it"); State v. Bauder, 181 Vt. 392, 924 A.2d 38, 51 n.8 (2007) (stating that driver's failure to produce **242 ownership documents is not basis to search vehicle, even if limited to glove compartment or sun visor).
We find the majority view, favoring a limited registration exception, more persuasive because it balances legitimate governmental interests in highway safety with individual rights.
We reject the ACLU-NJ's argument that because the United States Supreme Court has never passed on the validity of the limited registration search exception, the many courts that have done so have exceeded their constitutional authority. State and federal courts frequently address issues raised for the first time that require novel constitutional interpretations. The Constitution must adapt to new circumstances never envisioned by its drafters, and that organic process begins in various state and federal trial and appellate *393 courts. The United States Supreme Court sits as the ultimate court of last resort with its jurisdiction primarily confined to reviewing decisions of state supreme and lower federal courts. See U.S. Const., art. III, § 2.
The limited registration search exception to the warrant requirement has been an accepted doctrine in this State for more than fifty years. The dissent criticizes judicially created exceptions to the warrant requirement, such as this one. But the only exceptions to the warrant requirement are judicially created. Clearly, there have been opportunities to challenge the limited registration exception before the United States Supreme Court. We are confident that this warrant exception passes constitutional muster.
C.
In our view, a weighing of the driver's individual privacy rights against the government's legitimate interests in promoting highway and public safety leads to the conclusion that a limited registration search exception rests on solid constitutional ground. We continue to stand with those jurisdictions that have held the same. The rationale for a limited registration search exception is (1) the minimal invasion of the driver's reasonable expectation of **243 privacy; (2) the furtherance of public safety in general and officer safety in particular; and (3) the recognition that, for constitutional purposes, a brief and restricted search is arguably less intrusive than impounding the vehicle and conducting an inventory search later. Accordingly, after a driver is given the opportunity to present the vehicle's ownership credentials but is unwilling or unable to do so, a police officer may engage in a pinpointed search limited to those places, such as a glove box, where proof of ownership is ordinarily kept.
We further note that if a driver or passenger explains to an officer that he has lost or forgotten his registration, and the officer can readily determine that either is the lawful possessor, then a warrantless search for proof of ownership is not justified. Modern technology may increasingly allow police officers to make such timely determinations.
One last point. We reject the Appellate Division's conclusion that Keaton and Pena-Flores have effectively "superseded" Lark. In Lark, a police officer stopped the defendant--the driver--because of a missing license plate. 319 N.J. Super. at 621, 726 A.2d 294. The passenger immediately turned over the car's registration and insurance and his own driver's license, and a computer check verified the validity of the vehicle's registration. Ibid. The defendant told the officer that he did not have his license with him. Ibid. The officer, however, learned through a computer check that no license had been issued to the defendant. Ibid. Based on the apparently false information provided, back-up officers were called to the scene. Id. at 622, 726 A.2d 294. After the defendant and passenger were ordered to exit the car, an officer searched the vehicle for the defendant's identifying papers and found illicit drugs in the process. Ibid.
Overruling the trial court, the Appellate Division found that the search violated the Fourth Amendment and suppressed the evidence, id. at 624, 726 A.2d 294, and we summarily affirmed, 163 N.J. 294, 748 A.2d 1103. The Appellate Division reasoned that there was no basis to believe that the car was stolen and that the **244 absence of a license did "not establish probable cause to believe there was 'criminal activity afoot.' " 319 N.J. Super at 626, 726 A.2d 294 (quoting State v. Hill, 115 N.J. 169, 174, 557 A.2d 322 (1989) ). The Appellate Division concluded that the officer could have detained *394 the defendant until he learned his true identity or, if that failed, arrested him for driving without a license, but not search the car for identification without probable cause. Id. at 627, 726 A.2d 294.
The facts in Lark are starkly different from the facts in the case before us and those in Keaton and Pena-Flores--which were also registration cases. In contrast to the events in Lark, here, defendant not only operated his truck evasively, creating serious public-safety risks, but he also failed to produce any proof of the vehicle's ownership. Indeed, defendant's overall obstructive behavior raised an objectively reasonable suspicion that the vehicle might be stolen. Finding that the registration search was constitutional in this case does not suggest that Lark was wrong in finding the license search unconstitutional there. The two cases rest on entirely different rationales. The vitality of Lark is not an issue here.
In conclusion, we reaffirm the validity of the limited registration search exception and apply the standard outlined in Keaton to the facts before us.
VI.
From the beginning, Officer Devlin's encounter with defendant involved a very real danger. Defendant ran a stop sign, almost striking Officer Devlin's patrol car and prompting Officer Devlin to activate his lights and siren. Instead of pulling to the side of the road, defendant triggered a chase, weaving in and out of traffic, in a seeming attempt to elude the officer. For a half mile, defendant ignored the patrol car's visual and auditory signals to stop until he finally turned into a gas station.
Defendant's inexplicable and evasive behavior made Officer Devlin wonder whether the truck was stolen. The fact that Hertz had not reported the rental truck stolen at that point did not mean **245 that the truck was not stolen. The truck could have been hijacked from the true lessee a half hour or even minutes earlier. The latent danger confronting Officer Devlin and the back-up officer caused them to approach the truck with guns drawn. When the officers arrived at the driver's door, defendant repeatedly failed to respond to Officer Devlin's order to show his hands. After exiting the vehicle, defendant repeatedly failed to follow instructions to keep his hands out of his pockets.
Although defendant presented his license, he did not respond to three requests to produce the truck's registration or paperwork and did not indicate who owned the vehicle. Instead, he just stood there with a blank stare and, on one occasion, shrugged his shoulders. The officers did not have to wait an indeterminate amount of time before acting in these fraught circumstances, as the dissent suggests.
The Appellate Division posited that defendant's shoulder shrug suggested he did not know the location of the truck's paperwork and that the frightening nature of the encounter may have caused him to forget that he placed the truck's rental papers in his coat pocket. On the other hand, defendant may have been struck dumb because he knew that a loaded handgun was laying on the passenger's floorboard. Speculation that leads down many different alleyways, however, does not advance the legal analysis required.
The test is not what thoughts were in defendant's mind. Rather, the test is whether the officers acted in an objectively reasonable manner in light of the tense and perilous situation confronting them. See State v. Watts, 223 N.J. 503, 514, 126 A.3d 1216 (2015) ("[T]he proper inquiry for determining the constitutionality of a search-and-seizure is whether the conduct *395 of the law enforcement officer who undertook the search was objectively reasonable." (quoting State v. Bruzzese, 94 N.J. 210, 219, 463 A.2d 320 (1983) ) ). Police officers--such as those here--must make decisions in the moment, with uncertain information at hand and **246 without the luxury of considered reflection. See id. at 514-15, 126 A.3d 1216.
The trial court held that defendant was given a meaningful opportunity to present the truck's rental papers, and he failed to do so. We find that there is sufficient credible evidence to support that conclusion, and therefore we will not second guess the trial court's determination. See Gamble, 218 N.J. at 424, 95 A.3d 188. We cannot say that the officers acted unreasonably by not asking a fourth or fifth time for the papers or waiting several more minutes in the hope defendant would speak. From the objectively reasonable viewpoint of the officers, defendant was unwilling or unable to produce proof of ownership. At that point, the totality of defendant's behavior raised a reasonable suspicion that the truck might be a stolen vehicle. Permitting a driver to maintain possession of a potentially stolen motor vehicle is a public safety risk.
Based on decades of this State's jurisprudence, Officer Devlin had the right to conduct a limited, pinpointed search for the rental papers in the places where they are ordinarily kept. Here, he looked in the glove compartment and, while doing so, observed in plain view a handgun on the floorboard. The officers then arrested defendant and impounded the truck. The police later secured a warrant and seized the handgun, which was loaded with hollow point bullets.
It bears mentioning that the officers lawfully removed defendant from the truck for their safety and frisked him for weapons. Having done so, the officers were not required to allow the unresponsive and uncooperative defendant to return to the vehicle before Officer Devlin conducted a limited registration search. See Martin, 100 Cal.Rptr. at 273. The officers were entitled to take reasonable, common-sense measures to protect their own lives as they were attempting to determine whether the vehicle was stolen. See Terry, 392 U.S. at 23, 88 S.Ct. 1868. The United States Supreme Court has "expressly declined to accept the argument that traffic violations necessarily involve less danger to officers than other types of confrontations" and has noted " 'that a significant **247 percentage of murders of police officers occurs when the officers are making traffic stops.' " Pennsylvania v. Mimms, 434 U.S. 106, 110, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (quoting United States v. Robinson, 414 U.S. 218, 234 n.5, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) ). In short, the Constitution commands police officers to act reasonably, not to needlessly place their lives at risk.
Had the limited registration search not been a permissible option, the officers would not have allowed defendant to drive off in the truck when his lawful possession of the vehicle was in doubt. Under the circumstances in this case, even the dissent concedes that the officers were authorized to impound the vehicle. Post at 271, 179 A.3d at 409-10. Afterward, a standard inventory of the vehicle, including a search for the registration in the glove box, would have been permissible, leading to the discovery of the gun. See Opperman, 428 U.S. at 372, 96 S.Ct. 3092. The dissent's approach, which would disallow a limited registration search, merely delays the inevitable search. The dissent does not satisfactorily explain how the vehicle's impoundment and an inventory search would have been a less intrusive approach than the one taken by Officer Devlin. Indeed, the limited registration exception allows *396 the same search with the potential for a more minimal invasion of privacy. Had Officer Devlin found the vehicle's rental papers in the glove compartment, instead of a loaded gun on the floor, presumably defendant would have been permitted to go on his way. It would be odd if, here, an impoundment of the vehicle and inventory search were reasonable for Fourth Amendment purposes but a brief and limited registration search were not.
All in all, the officers acted reasonably, in accordance with our precedents permitting a limited registration search without a warrant and the dictates of the Fourth Amendment and Article I, Paragraph 7 of our State Constitution.
VII.
For the reasons expressed, we reverse the judgment of the Appellate Division and affirm the trial court's order denying the **248 motion to suppress. We remand to the Appellate Division for consideration of the issues not reached by it on defendant's direct appeal.
JUSTICES PATTERSON, FERNANDEZ-VINA, and SOLOMON join in JUSTICE ALBIN's opinion. CHIEF JUSTICE RABNER filed a separate, dissenting opinion, in which JUSTICES LaVECCHIA and TIMPONE join.

At the suppression hearing, no one questioned how long Officer Devlin remained in the vehicle searching for ownership credentials and after spotting the handgun on the floorboard. A videotape of the search was not played at the suppression hearing but was played for the jury during Officer Devlin's direct examination at trial. On cross-examination, defense counsel posited to Officer Devlin that, based on the tape, he was in the vehicle for approximately ninety seconds. Officer Devlin basically responded that the tape speaks for itself. The videotape has not been made part of the appellate record.

Presumably, this overall crediting of Officer Devlin as a witness extended to Officer Devlin's testimony that he did not "know if the car was stolen," as he approached defendant's vehicle.

Under Article I, Paragraph 7 of our State Constitution, we have adopted a more restrictive version of the automobile exception that allows for the search of a lawfully stopped vehicle "based on probable cause arising from unforeseeable and spontaneous circumstances." Witt, 223 N.J. at 450, 126 A.3d 850 (emphasis added). The federal approach permits a vehicle search based solely on probable cause. See Labron, 518 U.S. at 940, 116 S.Ct. 2485.

The dissenters in this appeal, two of whom joined Keaton, now contend that the limited registration exception invoked in our decisions in Keaton, Pena-Flores, Patino, and Boykins, and in a number of Appellate Division decisions, "does not rest on solid legal ground." Post at 248,179 A.3d at 396. We disagree.

A number of jurisdictions have come to the common-sense conclusion that a police officer is authorized to conduct a limited registration search of a vehicle abandoned on a public highway for proof of ownership. See 3 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 7.4(d) (5th ed. 2012) ("A police officer has the right to investigate vehicles abandoned along public highways and in doing so is permitted to undertake a limited search for a certification of registration for the vehicle [in] those areas of a vehicle where it would reasonably be expected that such a certification of registration might be found." (alteration in original) (quoting Muegel v. State, 257 Ind. 146, 272 N.E.2d 617, 620 (1971) ) ).