**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4238-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

AARON REID,

     Defendant-Appellant.

_____

> Submitted October 4, 2021 – Decided December 8, 2021
>
> Before Judges Rothstadt and Natali.
>
> On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Accusation No. 19-04-0382.
>
> Rosenberg Perry & Associates, LLC, attorneys for appellant (Robert M. Perry and Stephen J. Bodnar, on the brief).
>
> Scott A. Coffina, Burlington County Prosecutor, attorney for respondent (Alexis R. Agre, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

After his motion to suppress a weapon found during a credentials check based search of a car he had been driving, defendant Aaron Reid pled guilty to second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1), and received a sentence in accordance with his plea agreement to one year non-custodial probation. On appeal from his conviction, he challenges the February 25, 2020 denial of his suppression motion and asserts the following arguments:

POINT I

THE HANDGUN WAS SEIZED PURSUANT TO AN ILLEGAL WARRANTLESS SEARCH AND THE COURT BELOW ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS.

A. WARRANTLESS SEARCHES ARE PRESUMPTIVELY INVALID.

B. THE PLAIN VIEW EXCEPTION REQUIRES THE OFFICER BE LAWFULLY IN THE VIEWING AREA.

C. THE CREDENTIALS EXCEPTION TO THE WARRANT REQUIREMENT REQUIRES THE OPERATOR BE AFFORDED A "MEANINGFUL" AND "REASONABLE" OPPORTUNITY TO PRODUCE THE CREDENTIALS.

D. THE CREDENTIALS EXCEPTION PERMITS ONLY A "LIMITED, PINPOINTED SEARCH."

A-4238-19

E. THE COURT BELOW ERRED IN FINDING THE CREDENTIALS EXCEPTION APPLICABLE.

i. THE DEFENDANT WAS NOT AFFORDED A REASONABLE AND MEANINGFUL OPPORTUNITY TO PRODUCE HIS DRIVING CREDENTIALS.

ii. THE SEARCH WAS UNLAWFUL AS IT WAS NOT LIMITED AND PINPOINTED IN SCOPE.

POINT II

THE CREDENTIALS SEARCH EXCEPTION IS UNCONSTITUTIONAL. (NOT RAISED BELOW).

We have considered defendant's contentions in light of the record and the applicable principles of law. We conclude that while there is no merit to defendant's constitutional challenge to the credentials search exception to the warrant requirement, here the procedures necessary to justify that type of search were not followed and for that reason we reverse the denial of defendant's motion, vacate his conviction, and remand for further proceedings.

I.

The facts found by the trial court at the suppression hearing based on the testimony of the arresting officer are summarized as follows. During the evening of May 25, 2019, Officer Joseph Devlin of the Willingboro Police

3

Department attempted to stop a motor vehicle after observing that it was being operated with illegally tinted windows. Before he had the opportunity to effectuate the stop, the car was driven into a home's driveway. The four occupants then exited the vehicle and headed towards the house; three walked to the backyard and one went into the house. At some point prior to the occupants entering the home, the officer activated his vehicle's overhead lights and ordered the occupants to return to the vehicle.[1] Devlin testified that, although it could not be heard on his body cam video, one of the occupants responded by yelling "No, fuck you." All of them ignored his command.[2] Devlin remained outside the residence and waited for additional officers to arrive, which took about one minute.

After about one minute, the homeowner emerged from the house and spoke to the officer. The officer told the homeowner that the four occupants had

---

[1]   Devlin testified at the suppression hearing to three different scenarios regarding his activation of his vehicle's lights: he activated them (1) as the vehicle turned into the driveway; (2) prior to the occupants exiting the motor vehicle; and (3) after the occupants exited the motor vehicle. As discussed infra, the trial court found that the lights were already activated when the officer directed the fleeing occupants to return to the car.

[2]   The officer's body cam recording did not pick up the quoted response or anything else said by the vehicle's occupants.

A-4238-19

to either come outside or he would tow the car. A few seconds later, Officer Stefan Kowalski arrived, and he also spoke with the homeowner who then walked away from him.

As Kowalski spoke to the homeowner and, before the homeowner walked away, Devlin announced that he was going to "run the vehicle registration." After Devlin started to walk away, another responding officer, Officer Hankey, asked if "the car is locked." Devlin then stopped and opened the unlocked car without stating to anyone that he was going to search for credentials. Once he opened the car's door, he confirmed to Hankey that it had not been locked and immediately, without ever looking in the vehicle's glove compartment or center console, Devlin called out, "Got a gun in the driver['s] door."

A conversation between Hankey and Devlin then ensued about whether a search warrant was necessary for the discovery of the gun, whether the plain view exception applied, and whether a credentials search was allowed. In the end, Hankey replied, it is "sometimes better to be safe than sorry." Shortly after, Devlin ran a registration inquiry on the car that identified the owner of the vehicle as Alvin Reid, defendant's father.

Prior to opening the vehicle's door, Devlin never asked defendant or any of the vehicle's passengers to produce any vehicle credentials. Nor did he inform

5

any of them of his intention to search the car for credentials. In addition, Devlin calculated that one minute and fourteen seconds elapsed from his first interaction with the homeowner until he opened the car door. Moreover, within less than four minutes after his first interaction with the homeowner asking that he direct the vehicle occupants to return to the car, defendant and another of the vehicle's occupants, exited the house in accordance with Devlin's request.

Before Devlin arrested defendant, he requested defendant's consent to search the vehicle, which defendant refused. The vehicle was impounded and, eventually, Devlin obtained a warrant to further search the vehicle.

Defendant was later charged with second-degree possession of a weapon for unlawful purposes, N.J.S.A. 2C:39-4(a)(1), second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1), fourth-degree prohibited weapons and devices, N.J.S.A. 2C:39-3(f)(2), fourth-degree prohibited weapons and devices, N.J.S.A. 2C:39-3(j), third-degree receiving stolen property, N.J.S.A. 2C:20-7(a), and fourth-degree obstruction of the administration of law, N.J.S.A. 2C:29-1(a).

After his arrest, defendant filed his suppression motion. The trial court conducted a two-day suppression hearing at which Devlin and Kowalski testified. After the hearing, on February 24, 2020, the court issued a

comprehensive ten-page written decision explaining its reasons for denying defendant's motion to suppress. The next day the trial court entered an order memorializing its decision.

The trial court initially concluded that the "traffic stop was valid" after finding that Devlin's testimony was credible because "he reasonably believed that he observed a [traffic] violation." The court then determined that because the traffic stop was valid, "the officer was entitled to conduct an investigative detention" and that a "reasonable person would realize that his right to move has been restricted." He reasoned that because the "marked patrol car's overhead lights were on when [the officer], in uniform, instructed the defendant to return to the vehicle" that "defendant should have been aware that his right to freely move had been restricted at this point."

The court held the "warrantless search of defendant's car was valid under the credentials exception to the warrant requirement." It reasoned that the "defendant was given reasonable opportunity to present his registration information, but showed his unwillingness to provide such information by refusing to comply with his lawful detention" and instead "chose to ignore the officer," who despite his demand for defendant to return to the vehicle and his advice to the homeowner that defendant "needed to come outside," "received no

7

indication that" he would. According to the court, "[b]y ignoring the officer's instructions to return to the vehicle, . . . defendant [could not] so easily nullify the opportunity that the officer provided."

"Under the circumstances," the court found that "it was not unreasonable for [the officer] to conduct a limited credentials search after defendant was given reasonable opportunity, but, by his unresponsive conduct, indicated his unwillingness to provide those credentials," and that the "search was objectively reasonable . . . because it was the least intrusive method to obtain the registration information."

In reaching its decision, the court cited to State v. Watts, 223 N.J. 503, 514 (2015), for the proposition that "[t]he test is not whether there were other reasonable or even better ways to execute the search, for hindsight and considered reflection often permit more inspired after-the-fact decision making." According to the trial court:

> the officers on the scene had no indication that the defendant would exit the home in any reasonable amount of time, especially after leaving the scene of a traffic stop. From his vantage point, [the officer] had no way of knowing that the occupants of the vehicle had not simply left the area after entering the [backyard] of the home.
>
> A limited credentials search was an expedient, safe, and unobtrusive option under the circumstances. Obtaining

> a search warrant for a vehicle registration to issue a traffic ticket would be labor and time intensive. Entering the curtilage or home itself to locate the defendant would be highly intrusive and potentially dangerous for the officer. <u>Impounding the vehicle was another possibility. However, this is an intrusive, expensive, and time-consuming option</u>.
>
> [(Emphasis added).]

Turning to the discovery of the weapon, the court found the officer's search in the driver's door pocket was permissible under State v. Terry, 232 N.J. 218, 246 (2018) and State v. Patino, 83 N.J. 1, 12 (1980) because the credentials search was "confined to the glove compartment or other area where a registration might normally be kept in a vehicle." After finding that "a pocket compartment in the side of the driver's door is an area where a registration might normally be kept," the court held that "the search was appropriately limited in scope." Under the plain view doctrine exception to the warrant requirement, the court concluded the officer "was lawfully in the viewing area under the credentials exception" when he "observed a [gun] almost immediately upon opening the driver's side door."

Afterward, as already noted, defendant pled guilty to the one offense and was sentenced in accordance with his plea agreement. This appeal followed.

A-4238-19

Our review of a denial of a motion to suppress is limited. State v. Gamble, 218 N.J. 412, 424-25 (2014). We defer to the trial court's factual findings on the motion unless they are "clearly mistaken" or "so wide of the mark" that the interests of justice require appellate intervention. State v. Elders, 192 N.J. 224, 245 (2007). "A trial court's interpretation of the law, however, and the consequences that flow from established facts are not entitled to special deference." State v. Hubbard, 222 N.J. 249, 263 (2015) (citations omitted). As such, "[a] trial court's legal conclusions are reviewed de novo." Ibid.

We begin our review by rejecting defendant's constitutional challenge, raised for the first time on appeal, to a warrantless credentials search and conclude his argument in that regard is without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2). Suffice it to say, we will not consider his argument because it was not raised before the trial court, see State v. Witt, 223 N.J. 409, 419 (2015) ("For sound jurisprudential reasons, with few exceptions, our appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available."), and, in any event, our Supreme Court has repeatedly concluded that such searches under limited circumstances are valid. Terry, 232 N.J. at 222.

We turn to defendant's contentions that the limited circumstances where credential searches are permitted did not exist in this case. We agree.

The Fourth Amendment to the United States Constitution and Article I of the New Jersey State Constitution protect people from "unreasonable searches." U.S. Const. amend. IV; N.J. Const. art. I, § 7. The hallmark of these constitutional provisions is reasonableness. State v. Bruzzese, 94 N.J. 210, 217 (1983). A warrantless search is presumed to be unreasonable, and therefore invalid; "[h]ence, the State must prove the overall reasonableness and validity of [a warrantless] search." State v. Valencia, 93 N.J. 126, 133 (1983). A warrantless search may be found reasonable if the State proves, by a preponderance of the evidence, that the search falls within one of the "well-delineated exceptions to the warrant requirement." Elders, 192 N.J. at 246 (quoting State v. Pineiro, 181 N.J. 13, 19 (2004)).

One such exception is known as the "credentials search" exception, that permits a police officer to conduct a limited search of the areas in a vehicle where registration and insurance information is normally kept to verify a vehicle's credentials for public safety purposes. Terry, 232 N.J. at 222. In Terry, the Court "reaffirm[ed its] decision in [State v. Keaton, 222 N.J. 438, 450 (2015)] that, when a driver is unwilling or unable to present proof of a vehicle's

ownership, a police officer may conduct a limited search for the registration papers in the areas where they are likely kept in the vehicle." Terry, 232 N.J. at 223.

In analyzing and reaffirming the "limited registration exception" to the Fourth Amendment's requiring a valid warrant prior to conducting a search, the Court stated:

> The authority to conduct a warrantless registration search is premised on a driver's lesser expectation of privacy in his vehicle and on the need to ensure highway and public safety. A motorist must be given a meaningful opportunity to produce ownership credentials, but if he is either unable or unwilling to do so, an officer may conduct a brief and targeted search of the area where the registration might normally be kept in the vehicle.
>
> [Id. at 238-39 (citing Keaton, 222 N.J. at 448).]

"The test is not what thoughts were in defendant's mind. Rather, the test is whether the officers acted in an objectively reasonable manner in light of the . . . situation confronting them." Id. at 225. At the same time, the Court warned that "a warrantless search for proof of ownership will not be justified" "[w]hen a police officer can readily determine that the driver or passenger is the lawful possessor of the vehicle[]despite an inability to produce the registration." Id. at 223 (emphasis added). If that determination cannot be made, the credential

search is "permissible if confined to the glove compartment or other area where a registration might normally be kept in a vehicle." Id. at 236-37 (quoting Patino, 83 N.J. at 12).

Though the Court has not precisely defined "unwilling[ness]," the line of cases on the topic suggest that a motorist "unwilling[ness]" is derived from an officer asking for credentials and then receiving an express refusal or a non-verbal response, such as a shrug, before the officer can conduct a limited search for credentials. See id. at 237-238, 245.

In Terry, officers pursued a vehicle after the driver disobeyed a stop sign, almost collided with the police cruiser, failed to stop despite the officer activating the lights and siren of his patrol car, and zigzagged in traffic, before the motorist came to a stop. Id. at 224-25. After the driver exited the vehicle, the officers asked him three times for his credentials, and he was either non-responsive, stared blankly at the officers, and one occasion "shrugged his shoulders." Ibid. The Court held that officers gave the motorist a "meaningful opportunity" to present the vehicle's credentials. Id. at 246. The Court reasoned that the officers' "objectively reasonable viewpoint," the motorist's actions—i.e., non-responsiveness, blank stare, and shrug—signaled that he "was unwilling or unable to produce proof of ownership." Ibid.

A-4238-19

In Keaton, emergency medical technicians (EMTs) attended to the operator of an overturned vehicle when the officer came to the scene. 222 N.J. at 443-44. After securing the scene, and without asking the driver for his credentials, the officer went into the vehicle to get credentials for his report and found evidence of criminal activity. Ibid.

The Court upheld our reversal of the trial court's decision to deny the motion to suppress because it found that the officer never provided the motorist with the opportunity to provide his credentials. Id. at 442-43, 450. In its opinion, the Court outlined the number of other actions the officer could have taken—speak to the motorist, request the EMT's assistance, or ask the motorist for the credentials at the hospital—before denying the motorist the opportunity to provide the credentials. Id. at 450. It also held that an officer's "convenience and expediency" does not invalidate the officer's requirement to provide a motorist the opportunity to present credentials. See ibid.

In this case, the State failed to demonstrate that the officer gave defendant a "meaningful opportunity" to provide his credentials or that he was "unable or unwilling" to provide such credentials. Indeed, the officer's testimony does not reflect that he ever asked defendant for his credentials before he opened the car door.

14

Even more significant, consistent with the Court's instruction in Terry, and evident here from the officer securing information by running the vehicle's plates, the officer could have easily employed a minimal investigatory effort before he needed to conduct a warrantless credentials search that could be deemed reasonable. Id. at 243 (If the "officer can readily determine that either [the driver or passenger] is the lawful possessor, then a warrantless search for proof of ownership is not justified."). For example, the officer could have confirmed defendant was a "lawful possessor of the vehicle" by simply running the vehicle's plates, as he later did after he opened the car's door. Id.

The evidence established that the officer had no problem with quickly running the car's plates and determining that defendant's father was the registered owner of the vehicle with the illegal tinted windows. Had the officer taken that simple step before opening the vehicle's car door, there would have been no need for a credentials search at all and a summons for violation of N.J.S.A. 39:3-75 could have been issued to defendant who appeared within minutes of Devlin's conversation with the homeowner.

Contrary to the trial court's conclusion here, it is of no consequence that these actions would or would not have been "labor and time intensive," as the exception does not allow officers, for expediency's sake, to search for

15

credentials without providing a motorist the opportunity to present them. Keaton, 222 N.J. at 450. Moreover, without ever being asked for the credentials, a defendant's refusal to comply with the officer's command to return to the vehicle cannot equate to "unresponsive conduct" or an "unwillingness to provide [credentials]," leaving an officer free to conduct a credentials search while the motorist is away from the car. See Terry, 232 N.J. at 238-39; Keaton, 222 N.J. at 442-44. Here, the State failed to demonstrate that defendant was given a "meaningful opportunity" to provide his credentials and that he was "unable or unwilling" to provide such credentials.

Because we conclude that the officer was not legally authorized to enter the vehicle where the seized weapon was located, we need not address defendant's remaining arguments.

Reversed and remanded for further proceedings consistent with our opinion.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4238-19