119 A.3d 906

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. DURAN C. KEATON, A/K/A DURAN K. KEATON, DEFENDANT–RESPONDENT.

Argued February 2, 2015—Decided August 3, 2015.

440

*Joseph A. Glyn,* Deputy Attorney General, argued the cause for appellant (*John J. Hoffman,* Acting Attorney General of New Jersey, attorney).

*Alicia J. Hubbard,* Assistant Deputy Public Defender, argued the cause for respondent (*Joseph E. Krakora,* Public Defender, attorney).

Justice FERNANDEZ–VINA delivered the opinion of the Court.

This appeal presents the question of whether a police officer has a legal right to enter an overturned car in order to obtain registration and insurance information for the vehicle, without first requesting permission, or allowing defendant an opportunity to retrieve the documents himself.

In this case, while entering an overturned car to obtain information required to complete an accident report mandated by statute, a trooper observed a handgun and a small amount of marijuana. Defendant was arrested and subsequently charged and indicted by a grand jury for second-degree unlawful possession of a weapon, contrary to *N.J.S.A.* 2C:39–5(b), and second-degree possession of a weapon by persons not to have weapons, contrary to *N.J.S.A.* 2C:39–7(b).

The trial court denied defendant's motion to suppress the evidence found in the car, finding that the trooper lawfully conducted a search for defendant's credentials and was therefore permitted to seize any evidence discovered in plain view. The Appellate Division disagreed, finding that the trooper never gave defendant the opportunity to present his credentials. Therefore, since the trooper was not lawfully in the viewing area of the contraband, the Appellate Division found that the plain view exception did not apply, and reversed the court below.

We agree with the Appellate Division. In doing so, we find that the trooper was required to provide defendant with the opportunity to present his credentials before entering the vehicle. If such

an opportunity is presented, and defendant is unable or unwilling to produce his registration or insurance information, only then may an officer conduct a search for those credentials. Because defendant was never provided with such an opportunity, we find that the trooper did not lawfully seize the contraband under the plain view doctrine. We also find that the community-caretaker doctrine is inapplicable because there was no need for an immediate warrantless search to preserve life or property. For those reasons, we affirm the Appellate Division's holding.

I.

At approximately 12:30 p.m. on March 22, 2009, New Jersey State Trooper William Jacobs was patrolling I–295 in a marked police vehicle when he received a call regarding an overturned motor vehicle. Upon arriving at the scene, the trooper observed an overturned four-door black Buick sedan in the median between the northbound and southbound lanes.

Emergency Medical Technicians (EMTs) and the Department of Transportation (DOT) were on the scene when the trooper arrived. Debris from the accident was scattered across the scene, and workers from the DOT were attempting to close off a lane of traffic so that a tow truck could access the overturned vehicle.

The driver of the vehicle, defendant Duran Keaton, had already been removed from the vehicle, and was receiving treatment from EMTs for cuts on his face. The trooper did not ask defendant for his driving credentials or request permission to enter the vehicle to obtain the registration and insurance information.

The trooper later testified that upon arriving at an accident scene, his first responsibility is to ensure the safety of the driver and any passengers, and to facilitate any emergency medical treatment. The trooper explained that his next task is to clear the accident scene, restore the flow of traffic, and obtain information to complete an accident report. He stated that in order to complete the accident report, he is required to obtain the name of the driver, the vehicle registration, any insurance information, the

VIN number of the car, the license number of the driver, and the owner's address.

The trooper testified that he did not ask defendant for his credentials because he "knew [he] was going to Cooper Hospital, so [he] could obtain it from there if [he] needed to." The trooper testified that he "didn't want to slow the process down" and that he did not want to be the one asking "silly questions" in case "something was serious."

Aware of the fact registration and insurance information is usually kept in a vehicle's glove box, the trooper decided to enter the overturned vehicle to retrieve the documents. The trooper entered the vehicle through the open, rear driver-side window, because he believed it was the "safest" place to enter.

Once inside the vehicle, the trooper observed a black backpack that was "fully open." Inside the bag, the trooper saw a handgun. The trooper also observed a small bag of marijuana on the dashboard of the vehicle. The trooper located defendant's identification and insurance information inside the backpack. The vehicle's registration was also found inside the car.

Defendant filed a motion to suppress. Defendant asserted that the trooper's point of entry into the vehicle indicated intent to search the vehicle, not merely to retrieve the documents. Defendant further asserted that the trooper should have spoken to defendant to discuss the vehicle's ownership prior to entering the vehicle. In response, the prosecution argued that the trooper satisfied the plain view exception to the warrant requirement and lawfully viewed the items seized.

The trial judge denied defendant's motion to suppress. The judge found Trooper Jacobs' testimony to be credible and concluded that he properly seized the gun and marijuana after discovering those items in plain view, while conducting a search for the registration and insurance papers. The court noted that the trooper immediately recognized the handgun and marijuana as

contraband, and found that discovery of the contraband was inadvertent.

Defendant pleaded guilty to third-degree receiving stolen property. He was sentenced to four years of non-custodial probation along with mandatory fees and penalties.

## II.

On October 29, 2013, in an unpublished opinion, the Appellate Division reversed the trial court and held that the search of defendant's car violated the Fourth Amendment.

The appellate panel found that the plain view exception did not apply because the trooper could not lawfully search the car. The panel held that the trooper could only enter the vehicle if defendant was "unable or unwilling" to produce his license and registration. Because defendant's injuries were not life-threatening, the court found that the trooper should have: (1) afforded defendant the opportunity on his own, or with the help of another, to retrieve the documentation for the officer; (2) recovered the documents or information from defendant at the hospital; or (3) waited until defendant was released from the hospital to obtain the information.

The court explained that although going to the hospital might cause a delay, such "inconvenience is an insufficient basis upon which to justify a warrantless search of defendant's vehicle."

This Court granted the State's petition for certification. *State v. Keaton*, 217 *N.J.* 588, 91 *A.*3d 24 (2014).

## III.

### A.

The State first argues that in determining whether the trooper was lawfully inside defendant's vehicle, the Appellate Division failed to consider the role of police officers as community caretakers. The State maintains that the trooper acted reasonably in

allowing defendant to receive medical treatment by the EMTs, "rather than assuming his injuries were insignificant." The State contends that the trooper was fulfilling his role as a community caretaker by completing the statutorily required accident report, which must be completed within five days of the accident, with information regarding defendant's driver's license, insurance card, and vehicle registration. The State argues that when police officers are acting as community caretakers, there is no search for Fourth Amendment purposes when a police officer inadvertently discovers contraband.

The State contends that defendant appeared to be too injured to retrieve the information from the car himself, and therefore, it was "reasonable" for the trooper to search defendant's car. The State notes that imputing knowledge to the trooper that defendant's injuries were only minor is improper, because the trooper was not told the extent of defendant's injuries until after defendant was transported from the scene.

The State also argues that even if defendant was fit to retrieve his credentials, the trooper could not have permitted defendant to "risk physical harm by crawling into an overturned vehicle on the side of an interstate highway."

The State argues that for the trooper to visit defendant's hospital room would have been nearly "impossible and unnecessary." The State submits that there is nothing in the record to suggest that defendant was in possession of his credentials, and therefore, "[a] visit to the hospital ... would have been a fruitless waste of time."

Finally, the State maintains that the contraband in defendant's car would have been inevitably discovered as a result of an inventory search. The State contends that either the police or the towing company had the right to perform an inventory search in order to secure the contents of the vehicle. The State notes that although the trooper did not intend to conduct an inventory search, that fact does not defeat his right to do so.

### B.

In response, defendant argues that the plain view doctrine does not apply because the trooper was not lawfully in defendant's vehicle when the marijuana and gun were found. Defendant maintains that the trooper was not permitted to enter defendant's vehicle because there was no showing that defendant was "unwilling or unable to obtain the documents from the car and/or make arrangements for the same to occur." Defendant argues that the police should have given him the opportunity, with or without the help of another, to recover his credentials from the car, no matter his physical condition. In the alternative, defendant argues that the trooper should have gone to the hospital and asked defendant to produce the documents. Defendant claims that the trooper entered the car merely for his "own convenience and expediency," in violation of defendant's constitutional rights.

With regard to the State's reliance on the community-caretaking doctrine, defendant acknowledges that the trooper was required to remove the vehicle from the highway, but maintains that "towing the car and removing it from the highway was not dependent upon obtaining the credentials."

Finally, defendant argues that the State failed to prove by clear and convincing evidence that the contraband in defendant's car would have been inevitably discovered through an inventory search. Defendant maintains that although the car was towed, there was nothing to suggest the car was going to be impounded. Moreover, defendant contends that even if the car was impounded, "the State presented no evidence that it was their policy to inventory the car contents" after a car involved in an accident is towed.

### IV.

The Fourth Amendment and Article I, Paragraph 7 of the New Jersey Constitution protect against warrantless searches. Both provide that "[t]he right of the people to be secure in their

persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." *U.S. Const.* amend. IV; *N.J. Const.* art. I, ¶ 7. The police are required to obtain a warrant to conduct a search unless an exception to the warrant requirement applies. *State v. Earls,* 214 *N.J.* 564, 588, 70 *A.*3d 630 (2013).

The police did not have a warrant in this case, and the State argues that the plain view exception applies. We therefore turn our attention to that exception to the warrant requirement.

A police officer may seize evidence in plain view without a warrant if the officer is "lawfully . . . in the viewing area" when he discovers the evidence, and it is immediately apparent the object viewed is "evidence of a crime, contraband, or otherwise subject to seizure." *State v. Johnson,* 171 *N.J.* 192, 206–07, 793 *A.*2d 619 (2002). "The officer must discover the evidence 'inadvertently, meaning that he did not know in advance where evidence was located nor intend beforehand to seize it.'" *Id.* at 206, 793 *A.*2d 619 (quoting *State v. Bruzzese,* 94 *N.J.* 210, 236, 463 *A.*2d 320 (1983)).

Police officers who investigate a motor vehicle accident are required to complete an accident report. *N.J.S.A.* 39:4–131. The Commission of Motor Vehicles (Commission) promulgates this report, which calls for "sufficiently detailed information" including the cause, the conditions then existing, the person and vehicles involved, if the parties were wearing seat belts or on cellular phones, and other information. *Ibid.* The written report shall be forwarded to the Commission within five days after the investigation of the accident. *Ibid.*

We have held that a traffic violation may justify a search for things relating to that stop. *State v. Boykins,* 50 *N.J.* 73, 77, 232 *A.*2d 141 (1967). If the vehicle's operator is unable to produce proof of registration, the officer may search the car for evidence of ownership. *Id.* at 77, 232 *A.*2d 141. "Such a search must be reasonable in scope and tailored to the degree of the violation."

*State v. Patino,* 83 *N.J.* 1, 12, 414 *A.*2d 1327 (1980). " '[A] search to find the registration would be permissible if confined to the glove compartment or other area where registration might normally be kept in a vehicle.' " *Ibid.* (quoting *State v. Barrett,* 170 *N.J.Super.* 211, 215, 406 *A.*2d 198 (Law Div.1979)); *see also State v. Pena–Flores,* 198 *N.J.* 6, 31, 965 *A.*2d 114 (2009) ("[W]here there has been a traffic violation and the operator of the motor vehicle is unable to produce proof of registration, a police officer may [conduct a] search [of] the car for evidence of ownership ... confined to the glove compartment or other area where a registration might normally be kept in a vehicle."). Therefore, a search for registration in the rear of the vehicle would not be permissible. *Patino, supra,* 83 *N.J.* at 12, 414 *A.*2d 1327; *see also State v. Hayburn,* 171 *N.J.Super.* 390, 393–94, 409 *A.*2d 802 (App.Div.1979) (suppressing fruits of search of trunk, stating *Boykins* does not support broad proposition that all parts of car may be searched for registration certificate that driver cannot produce after traffic stop), *certif. denied,* 84 *N.J.* 397, 420 *A.*2d 321 (1980).

Our Appellate Division considered facts and circumstances similar to those presented by this matter in *State v. Jones,* 195 *N.J.Super.* 119, 122, 478 *A.*2d 424 (App.Div.1984). In that case, police arrived at the scene to find an overturned vehicle. *Ibid.* Officers approached the defendant, who only received minor cuts and bruises, and requested he produce his license and vehicle identification. *Ibid.* While able to produce his license, the defendant also indicated his vehicle credentials were still inside the overturned car. *Ibid.* As such, one of the responding officers entered the car through the driver's side door in order to obtain the necessary information. *Ibid.* While inside the car, the officer observed an open toiletry bag, which was found to contain a vial filled with a white powdery substance and a razor blade. *Ibid.* Suspecting the substance was cocaine, the officer seized the items. *Ibid.* The trial judge granted the defendant's motion to suppress and the State appealed, contending the evidence was in the officer's plain view and, therefore, he had a right to enter the

automobile to search for proof of ownership and the insurance card. *Ibid.* The Appellate Division affirmed the trial court's suppression of the evidence, finding "[a] defendant's constitutional right to privacy in his vehicle and personal effects cannot 'be subordinated to mere considerations of convenience to the police short of substantial necessities grounded in public safety.'" *Ibid.* (quoting *State v. Slockbower*, 79 *N.J.* 1, 12, 397 *A.*2d 1050 (1979)). The panel noted the officer was "obliged to make an accident report" as required by *N.J.S.A.* 39:4–131, however, the police officer did not have a right to enter the car to search for the registration and insurance card before affording the defendant a reasonable opportunity to obtain them himself. *Id.* at 123, 478 *A.*2d 424. The panel construed *Boykins* and *Patino* to require a showing that the defendant was either unable or unwilling to produce the registration card in order for a warrantless search to be valid. "Even evidence falling into plain view must be suppressed unless the officer was lawfully in the viewing area." *Ibid.* Thus, under settled law, the warrantless search of a vehicle is only permissible after the driver has been provided the opportunity to produce his credentials and is either unable or unwilling to do so. *See Bruzzese, supra,* 94 *N.J.* at 236, 463 *A.*2d 320; *Slockbower, supra,* 79 *N.J.* at 1, 397 *A.*2d 1050. Here, defendant was never provided such an opportunity. The trooper did not speak to defendant at the scene of the accident. The trooper never asked the EMTs for help in determining whether defendant was able to provide his credentials. Moreover, the trooper never asked defendant for his credentials once his injuries were tended to at the hospital. Instead, the trooper made the decision to search defendant's car for credentials only for the trooper's convenience and expediency, without ever providing defendant the opportunity to present them. Accordingly, we find that the items discovered in defendant's car do not fall within the plain view doctrine, and were illegally seized, because the trooper was not lawfully within the viewing area at the time of the contraband's discovery. *Bruzzese, supra,* 94 *N.J.* at 236, 463 *A.*2d 320 (requiring police officer to be "lawfully in the viewing area" to seize evidence under plain view

doctrine). We find that defendant was never provided a reasonable opportunity to present his credentials, and therefore, the search of his vehicle cannot be justified under the plain view exception to the warrant requirement.

## V.

We next consider whether the evidence offered by the trooper would be admissible under the inevitable discovery doctrine. Under that doctrine, in order to have otherwise inadmissible evidence admitted, the State is required to show that:

(1) proper, normal and specific investigatory procedures would have been pursued in order to complete the investigation of the case; (2) under all of the surrounding relevant circumstances the pursuit of those procedures would have inevitably resulted in discovery of the evidence; and (3) the discovery of the evidence through the use of such procedures would have occurred wholly independently of such evidence by unlawful means.

[*State v. Sugar*, 100 *N.J.* 214, 238, 495 *A.*2d 90 (1985).]

The State must offer "clear and convincing" evidence to sustain its burden. *Id.* at 240, 463 *A.*2d 320.

We hold that the State has failed to demonstrate, by clear and convincing evidence, that law enforcement officials would have inevitably discovered the contraband in defendant's vehicle. We find no evidence to suggest that the police intended to impound or inventory defendant's vehicle. That logically indicates that the State did not demonstrate that "proper, normal, and specific investigatory procedures would have been pursued in order to complete the investigation of the case." *Id.* at 238, 463 *A.*2d 320. Since the State has failed to show that the police would have impounded or inventoried the vehicle, the inevitable discovery doctrine does not apply.

## VI.

Finally, we address the State's argument that the community-caretaking doctrine permitted the trooper to enter the vehicle in order to complete the accident report, pursuant to *N.J.S.A.* 39:4–131.

■ The community-caretaking doctrine is a narrow exception to the warrant requirement. *State v. Edmonds*, 211 *N.J.* 117, 141, 47 *A.*3d 737 (2012). The doctrine

recognizes that police officers provide a wide range of social services outside of their traditional law enforcement and criminal investigatory roles. These social-welfare activities include, among other things, protecting the vulnerable from harm and preserving property. In performing these tasks, typically, there is not time to acquire a warrant when emergent circumstances arise and an immediate search is required to preserve life or property. This narrow exception to the warrant requirement has been applied to such circumstances as allowing the police to conduct a warrantless search of a car to locate a gun that was missing from a police officer, to perform a "welfare check" of a vehicle that was parked in an area known for suicides and whose last authorized driver was listed as a missing person, and to set foot in an apartment to ascertain the welfare of a child who was home from school, with no apparent excuse, in a residence that had been the site of an alleged sexual assault earlier that day.

[*Id.* at 141, 47 *A.*3d 737 (internal citations omitted).]

We find that the trooper's role as a community-caretaker did not permit him to conduct the search of defendant's vehicle. The trooper's statutory duty to prepare an accident report is not an exigent circumstance encompassed by the community-caretaker exception to the warrant requirement. While we recognize that the trooper may have had an obligation as a community-caretaker to remove defendant's damaged vehicle from the highway, he did not have a duty to search defendant's vehicle.

## VII.

For the reasons set forth above, the judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice RABNER, Justices LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ–VINA, SOLOMON, and Judge CUFF (temporarily assigned)—7.

*Opposed*—None.