**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4108-16T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ANTHONY D. PARKER, a/k/a
JOHNNIE PARKER,

    Defendant-Appellant.

_____

Argued December 19, 2018 - Decided January 17, 2019

Before Judges Ostrer and Mayer.

On appeal from Superior Court of New Jersey, Law Division, Camden County, Indictment No. 14-08-2357.

Justin T. Loughry argued the cause for appellant (Loughry and Lindsay, LLC, attorneys; Justin T. Loughry, on the briefs).

Natalie A. Schmid Drummond, Assistant Prosecutor, argued the cause for respondent (Mary Eva Colalillo, Camden County Prosecutor, attorney; Natalie A. Schmid Drummond, of counsel and on the brief).

PER CURIAM

Defendant Anthony Parker appeals from an April 27, 2017 judgment of conviction for second-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(b).  Defendant moved to suppress evidence of the gun seized without a warrant, which formed the evidential basis for the charge.  Upon denial of his suppression motion, defendant entered a negotiated guilty plea and was sentenced to prison for five years with a five-year period of parole ineligibility.  On appeal, defendant challenges the denial of his suppression motion in accordance with Rule 3:5-7(d).  We reverse and remand.

The judge conducted suppression hearings on July 26, 2016 and September 30, 2016.  The following facts were adduced at the suppression hearings.

At 10:00 p.m. on March 16, 2014, Berlin Township police officer Kenneth Barbagli, Jr., saw a white Dodge Charger bearing Pennsylvania license plate JGT6711, driven by defendant, exceeding the posted speed limit.  While following defendant's car, Barbagli received a call from police dispatch, reporting an erratic driver in the area.  Dispatch related the erratic driver was in a Chevy sedan with Pennsylvania license plate JDT6711.

Defendant drove into a shopping center and parked the car.  Barbagli parked behind defendant's car.  Defendant was in the driver's seat and a female

was in the front passenger seat. Barbagli asked defendant for his license, registration, and proof of insurance.

Exhibit D-7 marked during the suppression hearing was a sample of the blank rental pamphlet defendant claimed he gave to Barbagli. The pamphlet had spaces for "name," "color/model," and "license plate no." The blank pamphlet also had contact information for the rental agency. In addition, the blank pamphlet provided liability protection insurance for the driver of the rented vehicle within the minimum limits required by the jurisdiction in which an accident occurs. According to the suppression hearing testimony, the actual insurance policy was maintained in the rental agency's offices. Defendant testified the blank pamphlet marked at the suppression hearing was identical to the document he gave to the officer.[1]

Barbagli testified defendant gave him a one-page, typewritten rental agreement, which was separate from the renal pamphlet and its contents. Barbagli further explained a rental agreement typically constitutes the vehicle's

---

[1] The State objected to the blank pamphlet as lacking foundation testimony to establish the pamphlet produced in court was the same pamphlet given to defendant when he rented the car. Defense counsel offered to authenticate the document by recalling the rental agency employee; however, the judge declined to adjourn the suppression hearing. The judge agreed to consider the document in conjunction with the testimony, but declined to admit the document into evidence.

A-4108-16T1

registration. According to the officer, if the information on the rental agreement matched the vehicle's license plate, he would have considered the document sufficient proof of registration. However, Barbagli testified the license plate number typed in rental agreement was JDT6711, rather than the actual license plate number JGT6711. Because of this discrepancy, the officer considered the registration to be defective even though the model, make, and color of the rental car were correctly identified in the rental agreement. The only anomaly between the rental agreement and the actual vehicle was the letter "D" rather than the letter "G" on the license plate. Barbagli never called dispatch about the license plate discrepancy, never asked defendant to produce additional documentation to clarify the discrepancy, and did not contact the rental agency regarding the license plate discrepancy.

When checking defendant's driver's license, Barbagli discovered the license was suspended and defendant had an open child support warrant. Barbagli asked defendant to step out of the car and placed him under arrest for the open warrant. Barbagli then searched defendant incident to arrest and discovered a large sum of cash.

After arresting defendant, Barbagli reread the documentation provided by defendant. Due to the one-letter discrepancy regarding the license plate number,

4

Barbagli determined defendant failed to provide a valid registration. Based on defendant's failure to produce a legal registration, Barbagli conducted a "credentials search" of the car. Barbagli admitted the car had not been reported stolen before he conducted the credentials search. Even though the rental agency listed its telephone number and other contact information, Barbagli did not contact the agency to confirm the vehicle's registration. Because defendant was under arrest, defendant was not permitted to contact the rental company to clarify the registration information.

Barbagli searched the center console and visors for credentials, but found no additional documentation for the car. Barbagli then used a key he found in the center console to unlock the glove compartment. Inside the glove box, Barbagli discovered a loaded gun. After seizing the gun, the officer had the vehicle towed to the police impound lot.

Barbagli testified on direct examination that he returned the rental agreement and pamphlet to the glove compartment before it was towed to the police impound lot. Barbagli testified that he did not conduct an inventory search of the vehicle after it was impounded. He was unaware whether such a search was conducted by anyone else.

A-4108-16T1

On cross-examination, defense counsel asked Barbagli why his police report indicated "a vehicle inventory search as per [police] department[] guidelines." Barbagli responded he "must have forgotten" he performed an inventory search. Barbagli explained he conducted a search of the car limited to the console, visors, and glove compartment, and stopped his search after he found the gun.

No inventory paperwork was presented at the suppression hearing. Defendant believed the rental agreement and rental pamphlet were in the car when it was impounded. Defendant was unable to confirm his belief without an inventory list provided by the police.

A rental agency representative testified at the suppression hearing related to defendant's rental of the car. The agency representative could only locate the computer-generated contract for the car. He confirmed the contract listed a white Dodge Charger bearing Pennsylvania license plate JGT6711 was rented to defendant. The company had no record of any vehicle bearing the license plate JDT6711. The witness explained the computer-generated contract was not the same document that would have been given to defendant. According to the agency representative, the customer receives a shorter rental agreement with data from the agency's computer-generated contract. The rental agreement is a

6

one-page document, listing the customer's name, driver's license number, vehicle make, model, and color, and license plate number. The rental agreement provides a phone number for the local rental office. In addition, the form provides a "law enforcement hotline."

The rental agency representative further testified it was against company policy to place vehicle registration cards in its rental cars in the event the cars were stolen. The agency considers the rental agreement to be proper evidence of the vehicle's registration. The rental agency witness also testified the company's policy is to place insurance information in the glove compartment of its rental vehicles.

The rental agency witness was unable to locate a copy of the actual rental agreement provided to defendant for the white Dodge Charger. However, the witness produced a rental agreement signed by defendant on March 14, 2014, for a red Chevy Malibu with a South Carolina license plate. The witness attempted to explain why there was another rental agreement signed by defendant on the same date he rented the white Dodge Charger. The judge did not allow the testimony because the witness lacked personal knowledge regarding defendant's signed paperwork.

Defendant also testified during the suppression hearing. According to defendant, he reserved a red Chevy Malibu. When defendant arrived at the local rental office, the agency printed a rental agreement for the Chevy Malibu, and defendant signed the document before he inspected the car. Upon inspecting the Chevy Malibu, defendant felt there was something wrong with vehicle and asked to rent a different car. The rental agency offered defendant a white Dodge Charger, and he accepted and signed a rental agreement for that car. Defendant testified he was given a copy of the rental agreement for the white Dodge Charger.

Defendant further testified he had no personal automobile insurance. He declined the additional insurance coverage because he believed the rental agency provided basic insurance coverage for its rental cars.

Barbagli testified defendant initially refused to provide the requested documentation, but eventually gave him a "blank" form that appeared to be "a pamphlet for the rental." Barbagli stated the pamphlet lacked information describing or identifying the vehicle. The officer admitted he did not scrutinize the blank pamphlet and did not review the pamphlet's information to determine if the document constituted defendant's driving credentials.

A-4108-16T1

According to defendant, Barbagli rejected the rental agency pamphlet and asked for more specific driving credentials. Defendant testified Barbagli then asked for the rental agreement, which defendant provided.

In an oral decision on October 27, 2016, the judge denied defendant's motion to suppress the gun evidence. The judge found Barbagli to be "exceedingly credible." However, the judge failed to cite specific instances in supporting her belief regarding the officer's testimony, and overlooked inconsistencies in the officer's testimony highlighted by defense counsel.

Because defendant was issued two different rental agreements on the same date, the judge found evidence of "sloppy clerical work" and "careless dissemination of documents" by the rental agency, making it "certainly credible that whatever paperwork was given to [defendant] . . . was faulty." While the judge found defendant's testimony that he gave Barbagli "some documentation" to be credible, the judged concluded defendant "did not pay close attention to what he signed or read what he signed[,] [b]ecause . . . he would never have signed two rental agreements." The judge disregarded defendant's testimony explaining why there were two signed rental agreements for the same date.

The judge further found the one-letter typographical discrepancy between the actual license plate and the plate number in the rental agreement rendered

9

the registration defective. In addition, the judge concluded, "there is absolutely no legal requirement for the officer to contact [the rental agency] to verify ownership." In rejecting defendant's argument the insurance information was contained in the rental pamphlet produced to the officer, the judge found the "argument totally disregards the testimony of [Officer] Barbagli . . . that the documentation provided . . . was defective and faulty[.]" The judge's finding contradicted Barbagli's testimony that he never read the pamphlet or reviewed any portion of its contents.

The judge also found there was no evidence Barbagli used the search as a pretext. The judge stated dispatch's warning to Barbagli that defendant was known to carry a gun was "of no moment" and "there[] [was] absolutely no evidence on the record that the officer knew ahead of time there would be a firearm in the vehicle." Based on these findings, the judge upheld the warrantless credentials search of defendant's rental car and denied defendant's suppression motion.

On appeal, defendant raises the following arguments:

I.

FOR A WARRANTLESS SEARCH, EVEN ONE LIMITED TO A SUPPOSED SEARCH FOR CREDENTIALS, POLICE CONDUCT MUST SATISFY THE STANDARD OF OBJECTIVE

REASONABLENESS, UNDER A TOTALITY OF THE CIRCUMSTANCES APPROACH, AND OFFICER BARBAGLI'S CONDUCT IN THAT CASE FAILS THIS TEST.

II.

AT ALL EVENTS, THE LIMITED "CREDENTIALS" SEARCH DEPENDS UPON THE JUDGE'S FINDING OF THE OFFICER AS CREDIBLE – A FINDING MADE WHILE IGNORING AND OVERLOOKING IMPORTA[N]T EVIDENCE IMPEACHING AND CONFLICTING WITH THAT FINDING, WHICH THE MOTION JUDGE IN HER LENGHTY OPINION SIMPLY NEVER CONSIDERED AT ALL.

III.

THE COURT'S FINDINGS IN EFFECT SHIFTED THE BURDEN OF PROOF AND FAILED TO CONSIDER THE OBVIOUS SPOLIATION OF EVIDENCE THAT OUGHT TO HAVE RESULTED IN DRAWING INFERENCES AGAINST THE STATE'S FACTUAL CONTENTIONS WITH RESPECT TO THE CONTENT OF THE UNPRESERVED RENTAL AGREEMENT.

IV.

THE SEARCH COULD NEVER QUALIFY AS AN INVENTORY SEARCH, AND THE IMPOUNDMENT WAS AN IMPERMISSIBLE SEIZURE SINCE THE POLICE DID NOT SATISFY THE REQUIREMENTS OF AN IMPOUNDMENT SEARCH.

We review a motion judge's factual findings in a suppression hearing with great deference. State v. Gonzales, 227 N.J. 77, 101 (2016). In our review of a "grant or denial of a motion to suppress[,] [we] must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v. Gamble, 218 N.J. 412, 424 (2014). We defer "to those findings of the trial judge which are substantially influenced by his [or her] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Elders, 192 N.J. 224, 244 (2007) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). The trial court's legal conclusions are entitled to no special deference, and are reviewed de novo. State v. Jessup, 441 N.J. Super. 386, 389-90 (App. Div. 2015).

The Fourth Amendment to the United States Constitution and Article I of the New Jersey State Constitution protect people from "unreasonable searches." U.S. Const. amend. IV; N.J. Const. art. I, § 7. The hallmark of these constitutional provisions is reasonableness. State v. Bruzzese, 94 N.J. 210, 217 (1983). A warrantless search is presumed to be unreasonable, and therefore invalid; "[h]ence, the State must prove the overall reasonableness and validity of [a warrantless] search." State v. Valencia, 93 N.J. 126, 133 (1983). A

warrantless search may be found reasonable if the State proves, by a preponderance of the evidence, the search falls within one of the "well-delineated" exceptions to the warrant requirement.  Elders, 192 N.J. at 246 (quoting State v. Pineiro, 181 N.J. 13, 19 (2004)).

One such exception is known as the "credentials search" exception, whereby a police officer may conduct a limited search of the areas in a vehicle where registration and insurance information is normally kept to verify a vehicle's credentials for public safety purposes.  See State v. Terry, 232 N.J. 218, 222 (2018).  In Terry, the Court "reaffirm[ed its] decision in Keaton[2] –and in previous cases – that, when a driver is unwilling or unable to present proof of ownership, a police officer may conduct a limited search for the registration papers in the areas where they are likely kept in the vehicle."  Terry, 232 N.J. at 223.  However, the Court added an additional "limiting principle," stating "a warrantless search for proof of ownership will not be justified" "[w]hen a police officer can readily determine that the driver or passenger is the lawful possessor of the vehicle – despite an inability to produce the registration . . . ."  Ibid.

---

[2]  State v. Keaton, 222 N.J. 438, 450 (2015).

In analyzing and reaffirming the "limited registration exception" to the Fourth Amendment's requiring a valid warrant prior to conducting a search, the Court stated:

> The authority to conduct a warrantless registration search is premised on a driver's lesser expectation of privacy in his vehicle and on the need to ensure highway and public safety. A motorist must be given a meaningful opportunity to produce ownership credentials, but if he is either unable or unwilling to do so, an officer may conduct a brief and targeted search of the area where the registration might normally be kept in the vehicle.
>
> [Id. at 238-39 (citing Keaton, 222 N.J. at 448).]

The Court determined the exception continued to "rest[] on solid constitutional ground[,]" id. at 242, but held it did not apply where "a driver or passenger explains to an officer that he has lost or forgotten his registration, and the officer can readily determine that either is the lawful possessor . . . . Modern technology may increasingly allow police officers to make such timely determinations." Id. at 243.

Here, the State failed to satisfy the requirements to invoke the credentials search exception to conduct a warrantless search of defendant's rental car. Barbagli testified defendant produced his driver's license, the rental agreement, and a rental pamphlet. The rental agreement and rental pamphlet identified the

rental agency as the owner of the vehicle and provided the agency's telephone number and e-mail address to verify vehicle information. The rental pamphlet stated the driver of the rental car was insured as required by law, and the insurance policy information was available from the rental agency.

Testimony and documents presented during the suppression hearing confirmed defendant was driving a white Dodge Charger with a Pennsylvania license plate leased from the rental agency's Philadelphia airport office. Even crediting the officer's testimony, claiming a typographical error between the actual license plate number and the license plate number in the rental agreement, the rental agreement identified defendant as the lessee, accurately described the color, make, model, and out-of-state registration for the car, and six of the seven characters on the license plate. During his testimony, Barbagli never claimed a belief the car was stolen or unregistered. To the contrary, the officer conceded the paperwork indicated defendant was likely truthful about his rental of the vehicle. There is no evidence defendant was unwilling or unable to provide registration documentation, which would have justified the credentials search of defendant's rental car. Indeed, defendant provided the registration documentation given to him by the rental agency.

15

Nor was there a pressing public safety concern supporting the officer's search of the vehicle. The car was legally parked in a shopping center, defendant was under arrest, and his passenger was permitted to leave the scene. Under the circumstances, there was no risk to public safety that someone might flee and drive away in a potentially stolen or uninsured vehicle.

Consistent with the Court's instruction in Terry, the officer could have confirmed defendant was a "lawful possessor of the vehicle." Terry, 232 N.J. at 223. If a driver cannot produce a vehicle's registration, an officer must employ a minimal investigatory effort, including the use of basic technology, before a warrantless credentials search will be deemed reasonable. Id. at 243. Here, the officer never checked the car's license plate through available law enforcement databases. Had the officer performed such a simple task, he presumably would have learned the name of the rental agency owning the car, consistent with defendant's documentation. Nor did the officer contact the rental agency despite the law enforcement hotline provided in the rental agreement.

Having reviewed the record, we are satisfied the warrantless search of defendant's rental car based on the credentials search exception is inapplicable in this case. Absent satisfaction of the requirements to invoke the credentials search exception, the officer would have had to discover the gun pursuant to the

16

plain view exception for a warrantless search. Because the gun was in the locked glove compartment, the gun was not in plain view and a search warrant was required. State v. Harris, 211 N.J. 566, 581 (2012). Under these circumstances, the gun evidence should have been suppressed.

We briefly address the State's argument that if the credentials search exception did not apply, the gun would have been inevitably discovered during the inventory search at the impound lot. The State failed to raise the inevitable discovery argument at the suppression hearing. Therefore, the issue was not preserved for appeal. See State v. Mahoney, 226 N.J. Super. 617, 626 (App. Div. 1988) (declining to consider inevitable discovery argument advanced by the State for the first time on appeal). "[T]he points of divergence developed in proceedings before a trial court define the metes and bounds of appellate review." State v. Witt, 223 N.J. 404, 419 (2015) (quoting State v. Robinson, 200 N.J. 1, 19 (2009)). "Parties must make known their positions at the suppression hearing so that the trial court can rule on the issues before it." Ibid. "For sound jurisprudential reasons, with few exceptions, our appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available." Ibid.

A-4108-16T1

Under the circumstances, the order denying the defendant's suppression motion is reversed, defendant's conviction is vacated, and the matter is remanded.

Reversed and remanded for further proceedings consistent with our opinion. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-4108-16T1