**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5276-16T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JERMINA LEWIS, a/k/a
ANDRE A. LEIS, ANDRE
A. LEWIS, ANDREW LEWIS,
and JERMINE LEWIS,

     Defendant-Appellant.

_____

Submitted September 23, 2019 – Decided December 17, 2019

Before Judges Ostrer, Vernoia and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Gloucester County, Indictment No. 13-12-1187.

Joseph E. Krakora, Public Defender, attorney for appellant (Frank M. Gennaro, Designated Counsel, on the brief).

Charles A. Fiore, Gloucester County Prosecutor, attorney for respondent (Alec Joseph Gutierrez and

Jonathan E.W. Grekstas, Assistant Prosecutors, on the brief).

PER CURIAM

Defendant, Jermina Lewis, appeals from the partial denial of a motion to suppress evidence and from his ensuing trial conviction for possession of cocaine with intent to distribute. Defendant contends that the drug evidence seized from his car pursuant to a warrant should have been suppressed as the fruit of the unlawful warrantless discovery of a firearm in the vehicle before it was towed to a police impound lot. We affirm the denial of defendant's motion to suppress because the police would have inevitably discovered the drug evidence in defendant's car in the course of executing a search warrant the police intended to apply for before the police discovered the firearm.

Defendant also contends for the first time on appeal that the State's expert on narcotics trafficking improperly testified as to defendant's intent to distribute the cocaine, violating a new rule of law announced in State v. Cain, 224 N.J. 410 (2016). We affirm the jury's guilty verdict because the erroneously admitted expert opinion, viewed in context with the State's other proofs and the defense asserted at trial, was not of such a nature as to have been clearly capable of producing an unjust result. R. 2:10-2.

Although not raised to our attention by either party, we have determined that defendant's conviction for possession of cocaine should have been merged into his conviction for possession of that same cocaine with intent to distribute. We therefore remand to the trial court to merge defendant's convictions on the drug offenses and enter an amended judgment of conviction.

I.

A grand jury returned an indictment charging defendant with second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b); second-degree possession of a weapon during the commission of a drug crime, N.J.S.A. 2C:39-4.1(a); third-degree unlawful possession of a controlled dangerous substance (cocaine), N.J.SA. 2C:35-10(a)(1); and second-degree unlawful possession of a controlled dangerous substance (cocaine) with intent to distribute, N.J.S.A. 2C:35-5(b)(2).

Defendant moved to suppress the firearm and drugs. After conducting an evidentiary hearing, the trial court granted defendant's motion to suppress the firearm but denied defendant's motion to suppress the drug evidence.

At defendant's first trial, the jury was deadlocked, resulting in a mistrial. A new trial was convened, and the jury convicted defendant of unlawful possession of cocaine and possession with intent to distribute.

A-5276-16T4

The trial judge sentenced defendant to one year in prison for unlawful possession of cocaine and five years in prison for unlawful possession of cocaine with intent to distribute. The judge ordered both terms of imprisonment to run concurrently.

Defendant on appeal contends that:

> POINT I
>
> THE COCAINE SEIZED SHOULD HAVE BEEN SUPPRESSED AS FRUIT OF THE POISONOUS TREE.
>
> POINT II
>
> DETECTIVE HENRY'S EXPERT TESTIMONY AS TO DEFENDANT'S STATE OF MIND CONSTITUTED PLAIN ERROR.

II.

We first consider defendant's argument that the drugs seized from his car pursuant to a search warrant should have been suppressed as a "fruit of the poisonous tree." The pertinent facts presented at the suppression hearing follow.

At around 10:30 p.m. on August 5, 2013, Officer William Donovan observed defendant's motor vehicle travelling above the speed limit and swerving between lanes of traffic. Donovan activated his mobile video recorder (MVR) and ordered defendant to pull over. Donovan approached defendant's

4

car from the passenger side while using his flashlight to inspect the interior of the vehicle for weapons. Donovan did not observe any objects resembling a handgun.

As Donovan approached the vehicle, he smelled the odor of raw marijuana emanating from the interior through the open front passenger window. During the course of questioning, Donovan advised defendant that he detected the odor of raw marijuana. Defendant responded that he had smoked marijuana earlier that night.

Donovan asked defendant to step out of the vehicle. The officer observed defendant alternate between touching his right front pants pocket and placing his hands within his pants pockets. Donovan asked defendant whether he was carrying any contraband. Defendant admitted that he had marijuana in his pocket.

Donovan placed defendant under arrest and conducted a search of defendant's person incident to the arrest. That search revealed a large fold of cash in defendant's back pocket, as well as a large amount of cash in defendant's wallet. In total, Donovan found $4993 on defendant. Donovan administered Miranda[1] warnings, and defendant expressed his willingness to answer the

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

A-5276-16T4

officer's questions. Defendant explained that the cash was for his college tuition. Defendant denied that there was additional contraband in his vehicle and refused to consent to a search of the vehicle.

Donovan requested a K-9 unit be dispatched to the scene of the arrest. Officer Jeff Leach and two other officers arrived as backup while Donovan was waiting for the drug detection canine to arrive. Donovan advised Leach that he had discovered marijuana in defendant's possession and had placed defendant under arrest.

The drug detection canine inspected the exterior of defendant's vehicle and alerted to the presence of narcotics. Donovan then requested a tow truck to transport defendant's vehicle to the police impound lot. Donovan testified that he intended to apply for a warrant to search defendant's vehicle.

Donovan transported defendant to police headquarters, leaving Leach and the K-9 officer to watch over defendant's vehicle until the tow truck arrived. Leach decided to inspect the interior of defendant's vehicle to confirm that defendant had not taken his keys with him to police headquarters. As he approached the vehicle from the passenger side, Leach shined his flashlight at the steering wheel and observed the keys in the ignition. Leach testified that he then conducted a "random scan" inside defendant's vehicle and observed the grip

6

of a handgun protruding from the rear pocket of the driver's seat. Leach testified that the grip was protruding approximately two to three inches from the pocket. Leach contacted Donovan and told him that he had located a firearm in defendant's vehicle.

Donovan prepared the search warrant affidavit before the end of his duty shift at 6:00 a.m. He later applied for the search warrant during business hours. The affidavit in support of the search warrant included information that a firearm had been located in the vehicle, as well as information pertaining to the discovery of the marijuana, the positive indication for narcotics by the drug detection canine, and the large amount of cash. The search warrant application was granted, and the ensuing search uncovered 96.4 grams of cocaine in a backpack located on the rear seat of the vehicle. The search also uncovered a digital scale in the glove box.

The trial judge found Donovan to be a credible witness. In contrast, the judge questioned the testimony regarding the discovery of the firearm, prompting the judge to suppress the weapon.[2] The judge nonetheless found that

---

[2] The State did not seek leave to appeal the suppression of the firearm, either on the grounds that it had been lawfully discovered or that, despite its unlawful discovery, it should have been admitted under the inevitable discovery doctrine. See State v. Sugar, 100 N.J. 214 (1985) (Sugar II) (recognizing the inevitable

(continued)

the cocaine and digital scale were admissible, reasoning that if information about the firearm were redacted from the search warrant application, the remaining portions of Donovan's affidavit still established probable cause to believe that controlled substances would be found in the vehicle.

III.

When reviewing a motion to suppress evidence, we accept the factual findings made by the trial court "provided those factual findings are 'supported by sufficient credible evidence in the record.'" State v. Smith, 212 N.J. 365, 387 (2012) (quoting State v. Handy, 206 N.J. 39, 44 (2011)). "In considering the legal conclusions to be drawn from those facts, our review is de novo." Ibid. (citing Handy, 206 N.J. at 45).

The critical issue before us is whether the discovery of the cocaine and digital scale is the fruit of the unlawful discovery of the firearm. There is no doubt that the discovery of the firearm preceded the application for the search warrant and the ensuing discovery of the drugs and scale. However, the "fruit of the poisonous tree" doctrine recognized in Wong Sun v. United States does not automatically mandate the suppression of all evidence found subsequent to

discovery doctrine and setting forth its application in New Jersey). Nor has the State filed a cross-appeal. Accordingly, the trial court's decision to suppress the firearm is not before us.

an unlawful search or seizure. 371 U.S. 471, 487–88 (1963). As the New Jersey Supreme Court explained in Smith, "[t]he exclusionary rule is not monolithic and inexorable." 212 N.J. at 389. Rather, "[c]ase law has developed certain exceptions to the exclusionary rule, in recognition of the fact that if exclusion in a particular instance will not further purposes of the exclusionary rule, there is no reason for the courts to apply it." Ibid. (citing Nix v. Williams, 467 U.S. 431, 443 (1984)). This case calls upon us to consider one of those exceptions— the "inevitable discovery doctrine."[3]

Before we examine the material elements of that exception, and to lay a foundation for applying those elements to the case before us, we first consider how to address the taint of the unlawful discovery of the firearm on the search warrant. We agree with the trial court that the appropriate manner of addressing the unlawful discovery of the firearm was to suppress that object and disregard all information concerning it in Officer Donovan's affidavit when determining whether the affidavit established probable cause for the search of the vehicle.

---

[3] In view of our holding that all of the requirements of the inevitable discovery doctrine have been satisfied, we need not address whether the cocaine and digital scale would also have been admissible under the conceptually related independent source doctrine. See generally State v. Holland, 176 N.J. 344 (2002) (embracing the independent source doctrine applied in Murray v. United States, 487 U.S. 533 (1988)).

See State v. Hunt, 91 N.J. 338, 349–50 (1989) (holding that "lawfully obtained information in . . . affidavits upon which . . . warrants were based justified their issuance" notwithstanding that the affidavits also contained information from unlawfully obtained telephone toll records).

We also agree with the trial judge that after excising all information concerning the firearm, the remaining information in Donovan's affidavit—all learned prior to the unlawful discovery of the firearm—established the probable cause needed to issue a warrant to search defendant's vehicle. See State v. Johnson, 120 N.J. 263, 290 (1990) (holding evidence seized during search pursuant to invalid consent was admissible under the inevitable discovery doctrine because police were preparing affidavit in support of the search warrant based upon pre-existing probable cause that would have inevitably led to the discovery of the contested evidence).

We turn next to whether the State has satisfied all of the prerequisites of the inevitable discovery doctrine. The leading cases in New Jersey are Sugar II, and State v. Sugar, 108 N.J. 151 (1987) (Sugar III). Under this exception to the exclusionary rule, the State must show by clear and convincing evidence that:

> (1) proper, normal and specific investigatory procedures would have been pursued in order to complete the investigation of the case; (2) under all of the surrounding relevant circumstances the pursuit of

those procedures would have inevitably resulted in the discovery of the evidence; and (3) the discovery of the evidence through the use of such procedures would have occurred wholly independently of the discovery of such evidence by unlawful means.

[Sugar II, 100 N.J. at 238.]

As to the first enumerated element, it is clear that Officer Donovan was pursuing proper, normal, and specific investigatory procedures throughout his investigation, culminating with his application for a warrant. This was not a situation such as the one presented in State v. Keaton, where the inevitable discovery doctrine was deemed inapplicable because there was "no evidence to suggest that the police intended to impound or inventory [the] defendant's vehicle." 222 N.J. 438, 451 (2015). Here, the decision to impound the vehicle was made before the firearm was unlawfully discovered. Indeed, the firearm was discovered while officers were waiting for a tow truck to arrive to take the vehicle to a police impound lot. The vehicle was being impounded, moreover, for the purpose of facilitating a search pursuant to a warrant.[4]

_____

[4] We note that the search in this case occurred before State v. Witt, 223 N.J. 409 (2015), was decided and at a time when reliance on the automobile exception to the warrant requirement was problematic under the exigency test described in State v. Pena-Flores, 198 N.J. 6 (2009), abrogated by Witt, 223 N.J. at 450. "[O]ne of the unintended consequences of Pena-Flores," the Court noted, "is the exponential increase in police-induced consent automobile searches." Witt, 223 N.J. at 415.

Although the application for the warrant was not made until the following day, Donovan testified that he had decided to apply for a search warrant before the firearm was discovered by Leach. The trial court found Donovan's testimony to be credible, and we have no reason to question that finding. See Smith, 212 N.J. at 387. Accordingly, the first element of the three-part inevitable discovery exception has been established, applying the clear and convincing standard required under the New Jersey Constitution. Sugar II, 100 N.J. at 240.

With respect to the second element enumerated in Sugar II, as we have already noted, the search warrant would have been issued even without the information concerning the unlawfully discovered firearm. In this instance, we need not speculate as to whether the pursuit of the investigative procedures would have resulted in the discovery of the evidence because the execution of the search warrant revealed the cocaine in the backpack on the rear seat and the digital scale in the glovebox.

Finally, we address the third element of the inevitable discovery exception. We conclude that the discovery of the cocaine and digital scale was independent of the unlawful discovery of the firearm, as shown conclusively by Donovan's decision to apply for the warrant before Leach informed him of the handgun. Furthermore, as we have already noted, the search warrant was

lawfully issued based on probable cause learned before—and thus independent of—the unlawful discovery of the firearm.

In sum, having established all three elements by clear and convincing evidence, the State has met its heavy burden under the inevitable discovery doctrine. Accordingly, we affirm the trial court's denial of defendant's motion to suppress the drug evidence seized from his motor vehicle.

IV.

A.

We next turn to defendant's contention that he is entitled to a new trial because the State's expert witness testified improperly as to defendant's state of mind, that is, his intent to distribute the cocaine. We begin by recounting what happened at trial in this case.

The State called Detective Deon Henry as a law enforcement expert in the field of drug trafficking. Henry testified that the street value of cocaine can vary, but a common street price is $100 for a gram and $1100 for an ounce. Henry testified that cocaine users typically consume between one to five "dime" bags per day. A dime bag, Henry explained, weighs approximately .3 grams. Henry also testified that it is typical for drug distributors to carry a large amount of cash.

A-5276-16T4

The prosecutor then posed the following hypothetical question:

> [I]n your opinion, based upon your knowledge, your training and experience in Gloucester County, if a person is traveling in a vehicle with approximately 96 grams or over three ounces of cocaine, they also have a digital scale and a large amount of cash.
>
> Would you believe that the person had that cocaine to use it personally or for distribution purposes?

Henry responded, "I would believe that the individual possessed that cocaine with the intent to distribute."

To put Henry's expert testimony in context for purposes of this appeal, we also summarize defendant's trial testimony. Defendant elected to testify and explained to the jury that his sister had borrowed his car for two days prior to his arrest. Defendant testified that he took a taxi to his sister's home, located his vehicle, and drove it away using a spare key that he kept with him. He denied owning the backpack and testified that he did not see the backpack in the car before driving off. He denied that he had seen the cocaine in the backpack. He also denied that he owned the scale in the glove compartment.

Defendant further offered an explanation for the large amount of cash he was carrying. He testified that after retrieving his vehicle, he went to see his mother, who had recently traveled from Jamaica with money for defendant's college costs and back rent that he owed. Afterwards, with the money his mother

14

gave him in his possession, he began his return trip home during which he was stopped by Officer Donovan.

## B.

In <u>Cain</u>, our Supreme Court imposed significant new restrictions on the use of law enforcement expert testimony in drug prosecutions. The Court recognized that expert testimony can be valuable to jurors in explaining the modus operandi of drug traffickers, observing that:

> [t]he average juror is not knowledgeable about the arcana of drug-distribution schemes. Law enforcement officers with extensive training, education, and experience of the drug world have specialized knowledge [that] will assist the trier of fact to understand the evidence or to determine a fact in issue. Experts can help jurors understand the indicia of a distribution operation, such as how drug traffickers package and process drugs for distribution. Experts can shed light on the significance of the quantities and concentrations of drugs, the value of drugs, the use of identifiable logos on drug packaging, and the function of drug paraphernalia, <u>e.g.</u>, scales, baggies, and cutting agents. Experts may also provide insight into the roles played by individuals in street-level drug transactions and into the various machinations used by drug dealers to thwart detection.
>
> [<u>Cain</u>, 224 N.J. at 426 (internal citations and quotation marks omitted).]

The Court nonetheless emphasized the need to ensure that expert testimony does not intrude upon the jury's fact-finding role. <u>Id.</u> at 427. Under

15

prior case law, an expert could "testify to the ultimate issue of fact—whether a defendant possessed drugs with the intent to distribute." Id. at 413 (citing State v. Odom, 116 N.J. 65, 80-81 (1989)). This was typically done through the use of thinly veiled "hypothetical" questions that allowed the prosecutor to summarize the State's case by incorporating detailed "assumptions" into the hypothetical question. The Court in Cain expressed concern about the misuse of such hypothetical questions, including the remarkably detailed hypothetical question in that case that spanned three pages of trial transcript. Id. at 414. Based on those concerns, the Court decided to change course, abrogating its decision in Odom and providing new limitations on the scope and format of law enforcement expert testimony about drug trafficking. Id. at 429.

Notably, Cain flatly prohibits prosecutors from eliciting an expert's opinion as to the defendant's state of mind, that is, whether the defendant possessed the drugs involved in the case with the intent to distribute as distinct from possessing the drugs for personal use. Ibid. The Court issued a clear and definitive new rule, holding that "[g]oing forward, in drug cases, an expert witness may not opine on the defendant's state of mind. Whether a defendant

possessed a controlled dangerous substance with the <u>intent</u> to distribute is an ultimate issue of fact to be decided by the jury."[5] <u>Ibid.</u>

The State on appeal acknowledges that Henry's expert testimony is prohibited in light of <u>Cain</u>. Although both parties agree that it was error to allow Henry to opine about defendant's state of mind,[6] the fact remains that defendant did not object when Henry offered his expert opinion. That is understandable in that the question the prosecutor posed and Henry's answer were deemed to be

---

[5] In <u>State v. Hyman</u>, 451 N.J. Super. 429 (App. Div. 2017), we rejected the defendant's argument that <u>Cain</u> prohibits an expert from opining on a defendant's state of mind in the sense of what the defendant intended by using particular words or phrases when conversing with others. <u>Id.</u> at 452–53. We held that <u>Cain</u> does not preclude an expert from opining about the meaning of jargon or code words used in the course of drug trafficking activities. Rather, we interpreted <u>Cain</u> to prohibit an expert from opining as to the defendant's state of mind that is an element of a charged offense. <u>Ibid.</u>

In this instance, Henry offered an opinion on defendant's state of mind with respect to his intent to distribute the drugs alleged to be in his possession, a material element of the "possession-with-intent-to-distribute" offense defined in N.J.S.A. 2C:35-5. This opinion testimony is clearly prohibited under <u>Cain</u>.

[6] As we have already noted, <u>Cain</u> announced a new rule of law. In <u>State v. Green</u>, we held that this new rule applies retroactively to cases on direct appeal at the time <u>Cain</u> was decided. 447 N.J. Super. 317, 327–28 (App. Div. 2016). The New Jersey Supreme Court has granted certification in <u>State v. Covil</u>, 236 N.J. 241, 242 (2018), to decide whether the <u>Cain</u> rule should be applied retroactively. Given that the State has not challenged the applicability of <u>Green</u> in this case, nor has either party argued the court should hold its decision in abeyance for the Supreme Court's decision in <u>Covil</u>, we choose not to delay issuing our decision in this matter.

A-5276-16T4

appropriate in <u>Odom</u>. Nonetheless, because defense counsel did not object during trial, in assessing whether the erroneously admitted expert opinion warrants reversal of defendant's conviction, we apply the plain error standard of review under which we must determine if the error "is of such a nature as to have been clearly capable of producing an unjust result." <u>R.</u> 2:10-2. <u>See</u> <u>State v. Macon</u>, 57 N.J. 325, 336 (1971) (explaining the plain error test as whether the possibility of injustice is "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached").

In assessing whether the error in this case constitutes plain error warranting a new trial, we consider both the nature and magnitude of the error and the weight of the admissible evidence against the defendant. <u>State v. Weston</u>, 222 N.J. 277, 294 (2015) (describing plain error as one "of sufficient magnitude to raise a reasonable doubt as to whether it led the jury to a result it would otherwise not have reached" (quoting Pressler & Verniero, <u>N.J. Court Rules</u>, cmt. 2.1 on <u>R.</u> 2:10-2 (2015))); <u>State v. Chapland</u>, 187 N.J. 275, 289 (2006) ("[A]ny finding of plain error depends on an evaluation of the overall strength of the State's case."). Where evidence against a defendant is overwhelming, the court need not reverse a defendant's conviction on the basis of improper expert testimony encompassing a defendant's state of mind. <u>State</u>

v. Sowell, 213 N.J. 89, 107–08 (2013) (affirming the defendant's conviction on the basis of overwhelming evidence of guilt).

We begin this analysis by noting that the magnitude of the misuse of the hypothetical question format in this case pales in comparison to what occurred in Cain. In Cain, the hypothetical question was essentially a "mid-trial summation," recounting every detail concerning the search that occurred in that case. 224 N.J. at 431. It is especially noteworthy that the hypothetical in Cain "unfairly bolstered the prosecution's case by asking the law enforcement expert to assume the defendant was a drug dealer." Id. at 431–32. The Court noted that "[t]he inclusion of the 'assumed' drug sales in the hypothetical had a potential domino effect." Id. at 432. Those combined circumstances led the Court to conclude, "[a]ccordingly, the taint of the hypothetical and the answer it elicited had the capacity to infect all of the charges and were 'clearly capable of producing an unjust result.'" Id. at 432-33.

The hypothetical and the answer it elicited in this case stand in sharp contrast to the circumstances in Cain. Here, the hypothetical question posed by the prosecutor was concise; the hypothetical was framed in two sentences comprising a total of sixty-one words. The prosecutor did not ask Henry to assume that defendant was a drug dealer. In short, although improper under the

new per se rule, the question and answer in this case comported dutifully with the practice permitted, indeed encouraged, in <u>Odom</u>.

The magnitude of the error must be measured against the strength of the State's proofs concerning defendant's intent to distribute the drugs.[7] The comparatively large quantity of cocaine involved—96.4 grams or roughly 3.4 ounces—must be considered in light of Henry's permissible and uncontroverted testimony that cocaine users typically consume between .3 and 1.5 grams a day. That testimony strongly suggests that the cocaine in the backpack was meant to be distributed to others and was not just for the personal use of whoever owned that backpack. Furthermore, the $4993 in defendant's possession and the

---

[7] We are not prepared to hold that the State's overall case against defendant was overwhelming, <u>see</u> <u>Sowell</u>, 213 N.J. at 107, especially considering that the first trial ended with a deadlocked jury on all counts. In view of defendant's testimony that he had loaned the car to his sister and took repossession of it without providing notice to her, the State's case was by no means overwhelming with respect to the "possession" element in N.J.S.A. 2C:35-10 and N.J.S.A. 2C:35-5. As to the possession element, the State presented no direct proof such as an admission or forensic evidence linking defendant to the cocaine. Rather, the State essentially relied on the inference of knowing possession that arises from the fact that the drugs were found in a vehicle defendant owned and was operating at the time the drugs were being transported. <u>Cf.</u> N.J.S.A. 2C:39-2(a) (creating permissive inferences as to possession of weapons in a vehicle). However, in assessing whether Henry's improper "state of mind" testimony constitutes plain error, we deem it appropriate to focus on the strength of the State's proofs concerning the intent-to-distribute element of N.J.S.A. 2C:35-5(a), since that is the element to which Henry's erroneously admitted opinion testimony relates.

presence of a digital scale found in the glove box of defendant's vehicle, when combined with the large quantity of cocaine, present a very strong if not overwhelming argument that the cocaine was possessed with intent to distribute.

Finally, the impact of the improper expert testimony on the trial outcome should be viewed in light of the defense that was presented to the jury. Defendant took the stand and testified that he had loaned his car to his sister for two days before his arrest. He claimed he did not own and was not aware of the backpack on the rear seat in which the cocaine was secreted. Although defendant's testimony in no way relieved the State of its burden to prove intent to distribute, the gravamen of the defense was not that the seized amount of cocaine was not meant to be distributed to others. Rather, defendant's testimony sought to convince the jury that he did not constructively possess the cocaine that was left behind by someone else during the two-day period when defendant allowed the car to be used by his sister.

Viewed in that context, and considering all of the relevant circumstances, we do not believe that the error in allowing the jury to hear the improper expert opinion testimony in this case was of such a nature as to have been clearly capable of producing an unjust result. R. 2:10-2.

V.

Normally, our determination on the arguments raised by defendant would end our review of this case. However, even when not challenged by either party, we may not overlook an illegal sentence imposed by a trial court. State v. Moore, 377 N.J. Super. 445, 450 (App. Div. 1988) ("[A] reviewing court is not free to ignore an illegal sentence." (citing State v. Flores, 228 N.J. Super. 586, 594 (App. Div. 1988)). We conclude based on our assessment of the record that the trial court imposed an unlawful sentence on defendant's conviction for possession of cocaine because the trial court was required to merge that conviction into defendant's conviction for possession of cocaine with intent to distribute. State v. Selvaggio, 206 N.J. Super. 328, 330 (App. Div. 1985) ("[C]onvictions for possession merge into . . . convictions for the simultaneous possession with intent to distribute the same substance.").[8] In this instance, both convictions were based on the cocaine concealed in the backpack found on the rear seat of defendant's vehicle. We therefore hold defendant's conviction for

---

[8] We also note that the sentencing court was not authorized to impose a one-year prison term for a third-degree offense. See N.J.S.A. 2C:43-6(a)(3) (requiring that a court sentencing a defendant to a period of imprisonment impose a term of between three and five years); N.J.S.A. 2C:44-1(f)(2) (permitting a court to sentence a defendant convicted of a crime of the first or second degree, not a crime of the third degree, "to a term appropriate to a crime of one degree lower than that of the crime for which he was convicted").

possession of cocaine must be merged with his conviction for possession of cocaine with intent to distribute.

In sum, we reject defendant's arguments and affirm his conviction. We remand for the trial court to enter an amended judgment of conviction in accordance with this opinion. We do not retain jurisdiction.

Affirmed in part and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5276-16T4