**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5952-17T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JAIME R. ALAMILLA, a/k/a
JAIME ROMERO-ALAMILLA,

     Defendant-Appellant.

_____

Submitted September 14, 2020 – Decided September 23, 2020

Before Judges Fasciale and Rothstadt.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 17-04-0457.

Joseph E. Krakora, Public Defender, attorney for appellant (Douglas R. Helman, Assistant Deputy Public Defender, of counsel and on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Lila B. Leonard, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

After pleading guilty, defendant appeals from his conviction for first-degree possession of a controlled dangerous substance (marijuana) with intent to distribute, N.J.S.A. 2C:35-5(a)(10)(a) and N.J.S.A. 2C:35-5(a)(1). Defendant's main argument is that the judge erred by denying his motion to suppress nineteen vacuum-sealed potting soil bags containing marijuana seized from his tractor trailer. During his guilty plea, defendant admitted to possessing the marijuana with the intent to distribute and agreed to testify against his co-conspirators. Consequently, the State recommended a downgraded sentence of seven years in prison, which the judge imposed. The co-conspirators are not involved in this appeal.

On appeal, defendant argues:

POINT I

[DEFENDANT] WAS SUBJECTED TO AN ARREST UNSUPPORTED BY PROBABLE CAUSE. THIS VIOLATED HIS FOURTH AMENDMENT RIGHTS, AND THE DRUGS SEIZED AS A RESULT OF HIS ILLEGAL DETENTION MUST BE SUPPRESSED.

A. The Fourth Amendment is the proper constitutional touchstone to evaluate this encounter, not the Fifth Amendment.

B. The encounter here went beyond an investigative detention and was in fact a de facto arrest.

C. No other grounds justify the search.

D. Suppression is the appropriate remedy.

We conclude that law enforcement initiated a proper investigative stop, defendant was never in custody, and the search was justified under the automobile and consent-to-search exceptions. We therefore reject defendant's contentions and affirm.

I.

In our review of the grant or denial of a motion to suppress, we "must defer" to the motion judge's factual findings, "so long as those findings are supported by sufficient evidence in the record." State v. Dunbar, 229 N.J. 521, 538 (2017) (quoting State v. Hubbard, 222 N.J. 249, 262 (2015)). We defer to those findings because they "are substantially influenced by [the judge's] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Lamb, 218 N.J. 300, 313 (2014) (quoting State v. Elders, 192 N.J. 224, 244 (2007)). We will disregard those findings only when a trial judge's findings of fact are clearly mistaken and "the interests of justice demand intervention and correction." State v. Hagans, 233 N.J. 30, 37-38 (2018) (quoting State v. Gamble, 218 N.J. 412, 425 (2014)). We

3

review a motion judge's legal conclusions de novo. Dunbar, 229 N.J. at 538; see also State v. Gandhi, 201 N.J. 161, 176 (2010).

Both the federal and State constitutions protect citizens against unreasonable searches and seizures. See U.S. Const. amend. IV; see also N.J. Const. art. I, ¶ 7; State v. Terry, 232 N.J. 218, 231 (2018). "The test of reasonableness cannot be fixed by per se rules; each case must be decided on its own facts." Terry, 232 N.J. at 231 (quoting South Dakota v. Opperman, 428 U.S. 364, 372-73 (1976)).

There are three types of interactions with law enforcement, each involving different constitutional implications depending on the event's impact on an individual's freedom to leave the scene. First, a "field inquiry is essentially a voluntary encounter between the police and a member of the public in which the police ask questions and do not compel an individual to answer." State v. Rosario, 229 N.J. 263, 271 (2017). The individual is free to leave, therefore field inquiries do not require a well-grounded suspicion of criminal activity before commencement. Id. at 271-72; see also Elders, 192 N.J. at 246. Second, an investigatory stop or detention, sometimes referred to as a Terry[1] stop, involves a temporary seizure that restricts a person's movement. A Terry stop

_____

[1] Terry v. Ohio, 392 U.S. 1 (1968).

implicates a constitutional requirement that there be "'specific and articulable facts which, taken together with rational inferences from those facts,' give rise to a reasonable suspicion of criminal activity." Elders, 192 N.J. at 247 (quoting State v. Rodriguez, 172 N.J. 117, 126 (2002)); see also Rosario, 229 N.J. at 272. Third, an arrest requires "probable cause and generally [are] supported by an arrest warrant or by demonstration of grounds that would have justified one." Rosario, 229 N.J. at 272.

When "determining whether a seizure occurred, a court must consider whether 'in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he [or she] was not free to leave.'" State v. Stovall, 170 N.J. 346, 355 (2002) (alteration in original) (quoting United States v. Mendenhall, 446 U.S. 544, 554 (1980)); see also State v. Tucker, 136 N.J. 158, 164 (1994). To establish that a stop was valid, the State has the burden to prove that the police were aware of "specific and articulable facts which, taken together with rational inferences from those facts, [gave] rise to a reasonable suspicion of criminal activity." State v. Mann, 203 N.J. 328, 338 (2010) (quoting State v. Pineiro, 181 N.J. 13, 20 (2004)); see also Terry, 392 U.S. at 20. If there was no reasonable suspicion, evidence discovered during a

search conducted during the detention is subject to exclusion. State v. Chisum, 236 N.J. 530, 546 (2019).

To determine whether reasonable suspicion exists, a court must consider the totality of the circumstances, viewing the "whole picture" rather than taking each fact in isolation. State v. Nelson, 237 N.J. 540, 554-55 (2019) (quoting Stovall, 170 N.J. at 361). This analysis may also consider police officers' "background and training," id. at 555, including their ability to "make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" Ibid. (quoting United States v. Arvizu, 534 U.S. 266, 273 (2002)). "'Furtive' movements by [a] defendant," unaccompanied by other circumstances, "cannot provide reasonable and articulable suspicion to support a detention in the first instance." Rosario, 229 N.J. at 277; see also State v. Dunbar, 434 N.J. Super. 522, 527 (App. Div. 2014).

Investigative stops are justified, even absent probable cause, "if the evidence, when interpreted in an objectively reasonable manner, shows that the encounter was preceded by activity that would lead a reasonable police officer to have an articulable suspicion that criminal activity had occurred or would shortly occur." State v. Davis, 104 N.J. 490, 505 (1986).

A-5952-17T1

Courts are to determine whether the totality of the circumstances gives rise to an "articulable or particularized" suspicion of criminal activity, not by use of a strict formula, but "through a sensitive appraisal of the circumstances in each case." Ibid. Our Supreme Court recognized the two-step analysis set forth in United States v. Cortez, 449 U.S. 411, 418 (1981),

> for determining whether the totality of circumstances creates a "particularized suspicion." A court must first consider the officer's objective observations. The evidence collected by the officer is "seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." "[A] trained police officer draws inferences and makes deductions . . . that might well elude an untrained person. The process does not deal with hard certainties, but with probabilities." Second, a court must determine whether the evidence "raise[s] a suspicion that the particular individual being stopped is engaged in wrongdoing."
>
> [Id. at 501 (alterations in original) (citations omitted) (quoting Cortez, 449 U.S. at 418).]

## II.

Here, three Task Force Officers of the Drug Enforcement Agency (DEA)—officers David Pinto, Robert Wronksi, and Peter Lang—patrolled a specific area known for drug trafficking. They each wore plain clothes and drove in a separate unmarked vehicle. Officer Pinto, who had extensive experience with arrests involving tractor-trailers distributing large quantities of

7

drugs, made the observations leading to the seizure of the drugs and defendant's arrest.

Pinto entered a Lowe's parking lot—which he knew to be a high drug-trafficking area—and drove around, jotting down license plate numbers of tractor-trailers. Pinto parked and another driver parked a Kia van about four or five spaces away. Pinto saw that person "get on the phone" and observed the interior of a nearby tractor-trailer cab, which had been operated by defendant, "light up." Based on his experience, Pinto concluded that the two were communicating by phone.

Drawing on his more than 150 narcotics and money-laundering investigations, Pinto suspected the two were working together to distribute drugs: specifically, that the van driver acted as the agent, and defendant—the driver of the tractor-trailer—acted as the transporter. Pinto watched them leave the lot simultaneously and followed them for twenty minutes. During this time, Pinto notified Wronski and Lang as defendant led the way with the van closely behind the tractor-trailer.

The three vehicles returned to the same area from where they started, then they headed to an industrial park where Wronski, joined them. The van parked in the same lot as Pinto; Wronski parked in a lot nearby. Defendant parked his

8

tractor-trailer on a dead-end street.  The officers noticed the interiors of the Kia van and tractor-trailer illuminate,  then observed defendant exit his tractor-trailer to talk to a driver of another vehicle—a cargo-van—that had arrived and parked in front of defendant's vehicle.

Shortly thereafter, the Kia van pulled onto the street with its lights off. The Kia van, the cargo-van, and the tractor-trailer then followed one another and backed into adjacent parking spots behind a warehouse. Pinto and Wronski arrived, exited their vehicles, and approached the back of the tractor-trailer, displaying badges.  Lang arrived, along with local police a minute later.

Pinto asked defendant what they were doing and what was in the tractor-trailer.  Defendant—who was not handcuffed or physically restrained in any way—responded "[c]ome on you already know [what we are doing]" and that "[y]ou know it's weed [inside the tractor-trailer]."  Pinto asked if defendant would consent to a search and, after defendant signed a consent form, Pinto and Lang saw the nineteen soil bags of marijuana, which were bumpy, vacuum-sealed, and lighter than the packaging indicated.  Pinto observed sealed brown boxes though the window of the cargo-van, obtained consent from that driver to search, and seized additional vacuum-sealed bags of marijuana like those

recovered from defendant's tractor-trailer. Defendant and the drivers of the vans were then arrested.

### III.

The judge took testimony from Pinto and found him credible. After hearing the testimony, conducting oral argument, and permitting extensive briefing, the judge concluded that Pinto and Wronski initiated a valid investigative stop based on reasonable suspicion; that defendant and his co-conspirators were engaged in criminal activity; that the officers did not subject defendant to a custodial interrogation; and that the search of the tractor-trailer and cargo-van was justified under the automobile exception to the warrant requirement.

Given our standard of review, we have no reason to disturb the judge's findings, which are supported by substantial evidence in the record. Looking at the totality of the circumstances, Pinto's investigative stop did not amount to a custodial interrogation. Rather, the brief and limited questioning—at night, with multiple suspects in an area who were unrelated to the warehouse—was designed to, as the judge found, dispel or confirm the reasonable suspicion of criminal activity. Pinto did not have his gun drawn, asked the two questions in

a non-accusatory manner, and did not physically restrain anyone.  Miranda[2]
warnings were therefore not required and defendant's blurting out that "weed"
was in the tractor-trailer provided the officers with probable cause to search the
vehicle.

We agree with the judge that the search was justified under the automobile
exception to the warrant requirement.  In State v. Witt, 223 N.J. 409 (2015), the
Court recognized that the "multi-factor exigency formula [was] too complex and
difficult for a reasonable police officer to apply to fast-moving and evolving
events that require prompt action."  Id. at 414.  The Court announced a bright-
line rule governing the construction of the automobile exception to the warrant
requirement.  Id. at 447-48.  Witt prospectively reinstated the test established in
State v. Alston, 88 N.J. 211 (1981) and authorized automobile searches in
situations where: "(1) the police have probable cause to believe the vehicle
contains evidence of a criminal offense; and (2) the circumstances giving rise to
probable cause are unforeseeable and spontaneous."  State v. Rodriguez, 459
N.J. Super. 13, 22 (App. Div. 2019) (citing Witt, 223 N.J. at 447-48).  Such is
the case here, where probable cause was spontaneously developed after the
officers performed the investigative stop.

---

[2]  Miranda v. Arizona, 384 U.S. 436 (1966).

Moreover, Officer Pinto obtained defendant's voluntary and knowing consent, orally and in writing, to search the tractor-trailer. Consent-to-search is an established exception to the warrant requirement. State v. Coles, 218 N.J. 322, 337 (2014). Consent must be given voluntarily and knowingly; the State has the burden to prove the consenting individual knew he or she had the right to refuse. State v. Domicz, 188 N.J. 285, 307-08 (2006). Whether consent was voluntary is "a question of fact to be determined from the totality of all the circumstances." Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973). The State must establish the voluntariness and validity of consent by clear and convincing evidence. State v. King, 44 N.J. 346, 352 (1963). On this record, defendant admitted marijuana was in the tractor-trailer, Pinto detained defendant briefly, and defendant gave consent orally and in writing which reflected that defendant "consented freely to [the] search". Pinto did not coerce defendant to consent, defendant was not under arrest or handcuffed, and defendant did not previously refuse the search.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5952-17T1